[L.A. No. 30294. In Bank. Jan. 13, 1975.]

LEW WARDEN, JR., Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Roger Arnebergh and Burt Pines, City Attorneys, George J. Franscell and John T. Neville, Assistant City Attorneys, for Defendant and Appellant.

Lew Warden, Jr., in pro. per., Olney, Levy, Kaplan & Tenner and Richard Devirian for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—Plaintiff filed an action against the City of Los Angeles, alleging that he had suffered personal injuries and property damage when his sailboat struck a submerged sewer pipe constructed and maintained in Santa Monica Bay by the city. The trial court, sitting without a jury, found for plaintiff and awarded him damages in the amount of $6,416. On this appeal from the ensuing judgment, the primary issue is whether the city was negligent in failing to request the Coast Guard's permission to install visible and audible aids to warn mariners of the hazard caused by the submerged pipe.

On June 24, 1967, plaintiff and several others were proceeding in the sailing yacht *Bandido* from San Francisco to Los Alamitos in heavy fog. Shortly after 2 a.m. the vessel struck the sewer pipe, which lay only 2.2

feet below the surface at low tide. The Coast Guard was summoned and towed the disabled vessel to safety. The vicinity of the pipe was marked by two "red nun" buoys which were unlighted and had no audible signals. The pipe was not marked as an obstruction on the charts of Santa Monica Bay issued by the United States Coast and Geodetic Survey.

The pipe had been constructed by the city in 1949 as an outfall for the city's Hyperion Sewage Treatment Plant. Three other pipes, installed for the same purpose in 1925, 1957 and 1959, were submerged under the seabed, but the sewer pipe which caused the accident protruded into the waters of the bay. The federal government exercised jurisdiction over the navigable waters of the bay at the time the sewer pipe was installed, and the city was required to and did obtain its authorization for the installation. In connection with the construction, the city inquired of the Coast Guard whether it was advisable to provide a whistling buoy to warn mariners of the pipe. The Coast Guard specified the two unlighted and inaudible buoys, but added that when a nearby marina commenced operations, a lighted sound buoy might be required. The marina, located two miles from the sewer pipe, was constructed in 1965, and small boat traffic in the vicinity increased substantially. The city owned and maintained the buoys.

In May and June 1964 three small craft struck the sewer pipe. An employee of the city mentioned the incidents to the chief of the Coast Guard's navigation aids office and inquired whether lights, bells or whistles should be placed near the pipe as a warning to mariners. The officer replied that the markings then in existence were "entirely adequate" and that "no benefit would result from the buoyage using lights or sound in addition to the markings of the present units."

The trial court recognized in its findings that the Coast Guard has exclusive authority to specify navigational aids and that the city had no authority to warn mariners about the danger posed by the pipe without that agency's approval. The court found, however, that the pipe and the unlighted buoys constituted a dangerous condition because of the absence of visible or audible aids, that the danger was exacerbated because the city negligently failed to formally advise the Coast Guard of the details of the damage to vessels which had previously struck the pipe or to report the inadequacies of the warning system, and had failed to seek authority to install a more comprehensive warning system. The court also found that the city should have known that the pipe was not

marked on the charts of the Coast and Geodetic Survey as a menace to navigation, and was negligent in failing to advise the appropriate authorities of this fact.[1]

Government Code section 835, subdivision (b), provides that a public entity may be liable for injury caused by a dangerous condition of "its property" if it had notice of the condition and sufficient time prior to the injury to have taken measures to "protect against" the condition. The term "property of a public entity" is defined as property owned or controlled by the entity (§ 830, subd. (c)), and "protect against" includes warning of the dangerous condition (§ 830, subd. (b)).

The city does not deny that the sewer pipe posed a hazard or that it was aware of the danger created thereby. Indeed the record is clear that the city placed the pipe near the surface although it could have submerged it for safety purposes, as was done with other installations. This created the dangerous condition which invokes liability under section 835, subdivision (a). But, asserts the city, since it was powerless absent Coast Guard authorization to place lights or audible signals upon the buoys, it neither "controlled" the property which caused plaintiff's injury, nor could it "protect against" the dangerous condition of that property.[2] Thus, contends the city, it had no duty to notify the Coast Guard of prior strikings or defects in the warning system and that any duty to warn plaintiff was that of the federal government rather than that of the city. Furthermore, it is argued, even if it was deemed that the city had the duty to notify the Coast Guard of the inadequacies of the warning system, the Coast Guard was in fact notified by a city employee as well as by others of the prior accidents in 1964 and nevertheless advised the city that the existing warning system was entirely adequate.

We cannot agree that the city as a matter of law met its responsibilities in connection with the dangerous condition created by the construction of the sewer pipe. Whether or not the city made an adequate disclosure

---

[1]The court ordered the city to make a complete formal disclosure of prior strikings to the Coast Guard, to request permission to install such visible and audible aids as the Coast Guard deemed adequate, and to forward a copy of the court's judgment to the Coast Guard.

[2]The city relies in this connection on *Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826, 833-834 [87 Cal.Rptr. 173], in which the court stated, "Where the public entity's relationship to the dangerous property is not clear, aid may be sought by inquiring whether the particular defendant had control, in the sense of power to prevent, remedy or guard against the dangerous condition; whether his ownership is a naked title or whether it is coupled with control; and whether a private defendant, having a similar relationship to the property, would be responsible for its safe condition."

of the details of the prior accidents to the Coast Guard, it is uncontra-dicted that after the three collisions in 1964 it merely "asked" a representative as to "current Coast Guard thinking" on the marking of the pipe and "the advisability" of adding lights or whistles to the existing buoys.[3] The city was aware that the Coast Guard had established procedures for the processing of applications for private aids to navigation, yet it never filed such an application nor made any definitive, affirmative request for lights or whistles on the two buoys. A representative of the Coast Guard testified that such a request would have been considered on its merits if it had been submitted.

Our conclusion in this regard is supported by *Shea* v. *City of San Bernardino* (1936) 7 Cal.2d 688, 692-693 [62 P.2d 365]. In that case, the plaintiff's injuries were caused by a defective grade crossing constructed on a railroad right-of-way on the streets of the defendant city. The city contended that it was powerless to remedy the condition because the railroad commission had exclusive jurisdiction to order the alteration of grade crossings. The court rejected this contention, holding that the city agencies "may not complacently declare that they were powerless over a long period of years to take any steps to remedy a defective and dangerous condition," but have a duty to call upon the commission to order the condition to be corrected, and thus to remove an obvious hazard.

The city relies upon the fact that the Coast Guard in 1970 conducted a study of the aids to navigation in the area of the sewer pipe and did not recommend either lighting the buoys or placing audible aids upon them. Instead, it recommended larger buoys, marked with stripes and reflective material. The city appears to claim that its failure to formally and affirmatively request that it be allowed to install lighted and audible aids could not be viewed as a proximate cause of the accident because even after the accident the Coast Guard failed to specify these additional measures. We do not find this contention meritorious. The fact that the Coast Guard failed to specify lights or audible devices after its own study was not binding on the trial court on the issue of negligence and does not as a matter of law signify that an affirmative request by the city to install such devices at its own expense would have been denied by the Coast Guard.

---

[3]After the 1964 accidents the city, at the request of the Coast Guard, distributed leaflets to yachtsmen in the area of the buoys pointing out the existence of the pipe and the buoys. The distribution of such a leaflet could not reasonably serve as a sufficient warning to mariners from distant ports, including this plaintiff, who was from San Francisco, and who ran afoul of the pipe three years later.

Since we have concluded that the trial court's judgment may be supported on the grounds stated above, it is not necessary to consider whether the city was also negligent in failing to advise appropriate authorities of the fact that the sewer pipe was not marked on the charts of the Coast and Geodetic Survey as a menace to navigation.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Burke, J.,* concurred.

■

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.