[Civ. No. 14927. Third Dist. Aug. 11, 1975.]

PAMELA ANN OSGOOD et al., Plaintiffs and Appellants, v.
COUNTY OF SHASTA, Defendant and Respondent.

COUNSEL

Ralph E. McCarthy for Plaintiff and Appellant.

Barrett, Newlan & Matheny, Peter D. Slaughter and David Johnson for Defendant and Respondent.

OPINION

**PARAS, J.**—This wrongful death action arises out of an accident in which the decedent was struck and killed by a motorboat while water-skiing on Shasta Lake on July 29, 1973.

Plaintiffs appeal from a judgment dismissing the complaint as to Shasta County, after a demurrer thereto was sustained without leave to amend.[1]

Plaintiffs' complaint, insofar as here pertinent, is summarized as follows:

At all times relevant, Shasta Lake was a public waterway within the County of Shasta, State of California. The defendants "actively encour-

[1]Plaintiffs' appeal appeared premature in that the State of California and 20 Does remained as defendants in the action. However, upon our notification to counsel of the prematurity problem prior to oral argument, plaintiffs dismissed the State of California (although not the 20 Does), and we therefore treat the appeal as timely.

aged and solicited members of the public, by financial expenditure and advertising, to use said lake for all recreational purposes," including waterskiing and boating; the defendants leased concessions and maintained facilities on the shoreline of the lake and otherwise regulated the use thereof by the public. Pursuant to the advertising of concessionaires and lessees of the defendants and with the actual financial assistance and encouragement of the defendants, Shasta Lake became known throughout the world as a recreational facility for use by members of the public for motorboating and waterskiing, as well as related activity. As a result of the program of the defendants, thousands of members of the public have used and continue to use Shasta Lake for aquatic recreational purposes. Defendants knew that the lake was being used by hundreds of water-skiers from all over the world and therefore was in an extremely dangerous and hazardous condition, "due to the physical configuration of the lake, hundreds of coves, inlets, arms and legs which would limit visibility of motor boat operators and water skiers throughout over 365 miles of shoreline of said lake" and "by reason of the use of said lake surface by large numbers of the public for motor boating and water skiing purposes." The defendants had direct knowledge of many fatalities and accidents occurring to members of the public, "resulting from the large numbers of members of the public using the facilities and the configuration of the lake, . . ." The defendants "failed to warn members of the public of said condition, but continued to actively encourage members of the public to use said facility while knowing of the dangers and defective condition of said lake as alleged." On or about said July 29, 1973, the deceased, Randall Oscar Osgood, while lawfully water-skiing on Shasta Lake, was struck and killed by a motorboat being lawfully operated upon said lake by Michael Vidauri and others. At said time and place defendants, by reason of the dangerous and defective condition, and their negligent control and failure to control, caused the said motorboat being operated by the Vidauris, to collide with said Randall Oscar Osgood, causing his death.

Section 831.2 of the Government Code[2] provides as follows: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to *any* natural condition of *any* lake, stream, bay, river or beach." (Italics added.)

█ The trial court sustained the county's demurrer on the ground that it was immune from suit under section 831.2 in that the lake "is

---

[2]Hereinafter all section references are to the Government Code.

unimproved public property." Citing *Rendak* v. *State of California* (1971) 18 Cal.App.3d 286 [95 Cal.Rptr. 665], the trial court said: "The plaintiff's contention here apparently is that the entire lake is dangerous and is exempted from Government Code Section 831.4 [*sic*] because it is a manmade lake. This Court rejects this contention as unmeritorious. The code section provides for immunity to, 'any natural condition of any lake,' not to any natural condition of any natural lake. The alleged defect is the configuration of the lake with its coves and so on and impaired visibility are natural conditions of the lake."

Plaintiffs contend on appeal, as they did in the trial court, that the immunity of section 831.2 extends only to natural lakes, and that since Shasta Lake is man-made and is not natural, the immunity does not apply. Resolution of the issue requires us to interpret the statute and ascertain the Legislature's intent in enacting section 831.2, and an important aid in this regard is the legislative history of the statute. (*Jolicoeur* v. *Mihaly* (1971) 5 Cal.3d 565, 572 [96 Cal.Rptr. 697, 488 P.2d 1]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 70, p. 3309; 45 Cal.Jur.2d, Statutes, § 173.)

When on January 10, 1963, section 831.2 was introduced to the California Legislature as a part of Senate Bill No. 42, it did not read as it does now. The original version was in the precise form recommended by the California Law Revision Commission and read in principal part as follows: "(a) Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any *natural* lake, stream, river or beach, if at the time of the injury the person who suffered the injury was not using the property for a purpose for which the public entity intended the property to be used." (Italics added.)

The comment of the Law Revision Commission which accompanied the commission's report to the Legislature and which proposed a body of legislation including section 831.2 read in part as follows: "This section is included so that public entities will not be required to inspect the many bodies of water and water courses in the State that are *not* held out for public use. Of course, *where a public entity designates a body of water for use as a public park, it may be expected to conduct reasonable inspections to see that the property is safe for such use.*" (Italics added.) (4 Cal.Law Revision Com. Rep. 852.)

From this language it is perfectly clear that the commission did not intend immunity for Shasta Lake, which is unquestionably a body of

water held out for public use and as a public park; and had the legislation been enacted as originally introduced, plaintiffs' contention herein would be sound. (Cf. *Rendak* v. *State, supra.*)

But on February 26, 1963, proposed section 831.2 was amended to enlarge the list of property to which the limited immunity applied. On March 12, 1963, it was again amended, this time describing such property as "any unimproved property including but not limited to any natural condition of any lake, stream . . . ." Most significantly, the adjective "natural" was deleted so that where the section formerly immunized "A natural condition of any *natural* lake, stream," it now immunized "any natural condition of any lake, stream, . . ." The limited nature of the immunity (that the property not be used by the injured person for the purpose intended by the public entity) was left intact.

Finally, on March 19, 1963, section 831.2 was again amended, primarily to make the immunity unconditional. There were four additional amendments to Senate Bill No. 42, none of them affecting section 831.2, which was therefore enacted in its present form. Thus proposed section 831.2 began with an extremely limited immunity inapplicable to man-made lakes, but "was amended to apply to natural conditions of *all* types of unimproved property and to make the immunity *unconditional."* (Italics added.) (4 Cal.Law Revision Com. Rep. 220.)

The foregoing legislative history makes the legislative intent regarding section 831.2 unmistakeably clear. The Legislature rejected a limited immunity inapplicable to artificial lakes in favor of an unconditional immunity applicable to all public lakes, including Shasta Lake. And it goes without saying that the shoreline of the lake is a natural condition thereof within the meaning of the section.

Plaintiffs' effort to establish two other independent grounds of liability must also fail. They do not state a cause of action under Government Code section 815.6 (failure to perform a mandatory duty, i.e., enforcement of safety laws, etc.), because they point to no duty imposed upon Shasta County by any enactment. Section 818.2 specifically provides for immunity for "failing to adopt an enactment or . . . to enforce any law." We note also that the complaint alleges that both parties to the accident were proceeding "lawfully." Plaintiffs' attempt to predicate entity

liability under section 815.2 on the negligence of employees in "failures to enact safety precautions and enforce the same" is fruitless for similar reasons.

The judgment is affirmed.

Friedman, Acting P. J., and Janes, J., concurred.