[Civ. No. 49136. Second Dist., Div. One. Mar. 28, 1977.]

EDWARD LEVINE, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Burt Pines, City Attorney, John T. Neville, Assistant City Attorney, and Michael K. Fox, Deputy City Attorney, for Defendant and Appellant.

Green, Royce & Seaman, George Kingsley and Al Schallau for Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—The case at bench raises the issue of the applicability of the doctrine of comparative negligence enunciated in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226] to government tort liability. We conclude that the *Li* rule is applicable so that a plaintiff's contributory negligence is not a total bar to his recovery in a suit under the Tort Claims Act. We conclude also that city's other contentions on appeal lack substance and discuss them in the appendix to this opinion to avoid distraction from the portion which merits publication.

*Facts*

Woodley Avenue is a north-south street in the San Fernando Valley. In 1953, Woodley was designed in the area from Victory Boulevard to Haynes Street in the configuration of a four-lane road but with the middle two lanes unpaved. On the north side of the intersection with Haynes, Woodley narrowed to a two-lane road. As a result, the extension of Woodley north of Haynes was a continuation of the unpaved middle south of Haynes while the easterly lane of Woodley terminated abruptly at the intersection.

The design of Haynes was approved by the city engineer. It was adopted because property owners on Woodley south of Haynes dedicated land for the construction and paid for the improvement. Although it would have cost only $200 or $300 to do so, city did not design the roadway with a gradual narrowing to avoid the trap created by the abrupt termination of the easterly traffic lane. The design was a "preliminary one" with the expectation that Woodley would be widened north of Haynes as traffic increased and funds became available.

In 1961, the unpaved median strip of Woodley was paved. In 1962, city installed a nonreflecting unlighted sign 310 feet south of Haynes which read "One Lane." The only lighting near the intersection consisted of a "standard overhanging type sodium vapor street light" about 50 feet north of the intersection on the west side of the street. The lighting left the northeast corner of Woodley in the dark. A diagram of the intersection follows:

Dirt Parking Area

4"-6" Elevation

Haynes Street

29'

75'

"One Lane" Sign

Woodley Avenue

Victory Boulevard

-N-

-W-

-S-

Not to Scale

By 1971, traffic in the area had increased 200 to 300 percent from 1953. The general area had changed from one solely of single family residences to one in which there were multiple unit dwellings and a commercial area immediately to the north of the intersection.

At about 7 p.m. on November 17, 1971, plaintiff drove his motorcycle north on Woodley from Victory Boulevard. The "One Lane" sign being nonreflective and unlighted and obscured by trees, plaintiff drove his cycle at 20 to 25 miles per hour in the easterly lane of Woodley and into the intersection with Haynes. Unable to negotiate the change from the easterly paved lane south of Haynes to the paved portion of Woodley on the north, plaintiff struck a four- to six-inch raised parking area also under the control of city. His motorcycle became airborne, throwing plaintiff and causing injury to him.

*Proceedings at Trial*

Plaintiff sued city for damage caused by his injuries. City asserted the defenses of design immunity and contributory negligence. The trial court held against city on the issue of design immunity and permitted the case to go to the jury. Arguing that it was relevant to the issue of lack of notice to it of a dangerous condition, the city offered evidence to establish that records of the street maintenance department showed no complaints with respect to the sudden narrowing of Woodley in the three years preceding the accident, and that records of the Los Angeles Police Department for the five years preceding the injury showed no traffic accidents related to the northeast corner. The trial court barred the evidence.

The jury was instructed on governmental liability for negligent creation of a dangerous condition and failure to correct a dangerous condition after notice. It found for plaintiff, determined his damages to be in the amount of $22,946.03 and allocated fault 16 percent to plaintiff and 84 percent to city. The trial court entered its judgment accordingly, awarding plaintiff 84 percent of the damage suffered.

*Contentions*

In this appeal, city contends: (1) plaintiff is barred from recovery by his contributory negligence because the doctrine of comparative negligence is not applicable to government tort liability; (2) the trial court erred in ruling that the "design immunity" of Government Code section 830.6 *is inapplicable in the case at bench; (3) there is a lack of substantial*

evidence that city had notice of the dangerous condition; and (4) the trial court erroneously barred the evidence offered by city to show that its records did not include complaints or accidents relating to the northeast corner of the intersection of Woodley and Haynes.

*Comparative Negligence.*

City contends that the trial court erred in applying the doctrine of comparative negligence. It argues that: (1) by reason of Government Code section 815 it is immune from liability except as otherwise provided by statute; (2) hence, section 815 eliminates common law governmental liability; and (3) the rule of comparative negligence as adopted in *Li* v. *Yellow Cab Co.* is not statutory but is expressed as an outgrowth of a common law principle declared in Civil Code section 1714.

City's argument has a surface appeal. Its analysis of the jurisprudential underpinning of *Li* is accurate. (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, 821-822.) The Legislature has declared a policy limiting to legislatively specified situations the shift of tort related loss from the individual to governmental entity. (Gov. Code, § 815; see also Legislative Com. comment to that section, Deering's Ann. Gov. Code, p. 117.)

Whatever the appeal of the city's argument, compelling precedent dictates a result to the contrary.

Government Code section 815 does state that "Except as otherwise provided by statute: [¶] (a) A public entity is not liable [in tort] . . . ." But the phrase as "provided by statute" is given its broadest possible meaning by our Supreme Court. It is not interpreted to mean that public entities are liable in tort only when the Legislature has enacted a statute imposing liability which on its face is applicable to public bodies. Rather, a liability is deemed "provided by statute" if a statute defines the tort in general terms. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 933 [101 Cal.Rptr. 568, 496 P.2d 480].)

A statute meets the Supreme Court's test although it is declaratory of the common law. Thus the high court held in *Nestle, supra,* that a public entity is liable for nuisance because nuisance is defined in Civil Code section 3479. That section derives from the Field Code enacted in California in 1872 which is also the derivation of Civil Code section 1714, the statute which concerned the Supreme Court in *Li.* The

definition of nuisance which is included in section 3479 is declaratory of the common law in the same manner as the rule of contributory negligence which is stated in section 1714.

*Nestle,* by finding public entity liability for nuisance because nuisance is defined in Civil Code section 3479, holds that a statute may impose public entity tort liability although the statute is merely declaratory of the common law. (See Comment, 61 Cal.L.Rev. 273, 648-656.) *Nestle* necessarily implies that public entity tort liability must be measured by judicially declared modifications in the statute.

We thus conclude that the rule of *Li* v. *Yellow Cab Co.* applies to government tort liability founded in negligence. Hence, the public entity may not rely upon the defense of·contributory negligence as a total bar to liability.

We conclude also that city's other contentions are not supported by the record. Those contentions are discussed in the appendix which follows.

## Disposition

The judgment is affirmed.

Wood, P. J., and Hanson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 26, 1977.

---

### APPENDIX

*Design Immunity*

Government Code section 830.6 states: "Neither a public entity nor a public employee is liable . . . for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative

body or other body or employee could have approved the plan or design or the standards therefor."

City contends that the trial court erred in placing plaintiff's theory of dangerous design before the jury because there is substantial evidence of reasonable conduct in the design of the Woodley and Haynes intersection. The record refutes that contention. The city's conduct in not tapering the roadway to avoid the danger is patently unreasonable in light of the $200 to $300 cost to do so. Nothing explains why, when Woodley was originally paved, a trap was created for nighttime travelers by paving the street south of Haynes on the outside of an unpaved median strip while north of Haynes the inside median was paved but the outside was not. The trap created by the unreasonable conduct continued until plaintiff was injured.

### Notice of Dangerous Condition

Plaintiff's alternative theories at trial were that city had notice of the dangerous condition of the Woodley-Haynes intersection so as: (1) to be liable under Government Code section 835, subdivision (b), irrespective of design immunity; and (2) to be liable under section 830.8 for failure to warn of the dangerous condition. (*Cameron* v. *State of California* (1972) 7 Cal.3d 318, 328-329 [102 Cal.Rptr. 305, 497 P.2d 777].) City argues that there is a lack of substantial evidence of notice.

Leaving aside the proposition that the judgment is sustainable on plaintiff's theory of dangerous design (*Codekas* v. *Dyna-Life Co.* (1975) 48 Cal.App.3d 20, 25 [121 Cal.Rptr. 121]), city's argument is not supported by the record. "A public entity [has] constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (Gov. Code, § 835.2, subd. (b).)

Here there is substantial evidence supporting the conclusion of the trier of fact that city had constructive notice of the dangerous condition of the intersection. (See *Briggs* v. *State of California* (1971) 14 Cal.App.3d 489, 494-495 [92 Cal.Rptr. 433]; *Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603, 613-614 [69 Cal.Rptr. 20].) The trap to northbound users of the easterly lane of Woodley was an obvious one which had continued for a number of years. The trap was virtually unilluminated. Any reasonable person would have known that motorcyclists using Woodley at night would be exposed to its danger.

Not only does the record support the conclusion that city had constructive notice of the dangerous condition and did nothing about it, the record also supports the ultimate fact that the city had actual notice. Long before the accident, city had placed a sign south of Haynes indicating that Woodley became a "one lane" street. The posting of the sign is evidence of knowledge of the danger. The fact that the sign was not reflectorized and was placed in an obscured position is evidence that city did not act reasonably to warn of the danger of which it was aware.

### Excluded Evidence

City argues that the judgment must be reversed for trial court error in barring evidence of the lack of a showing of complaints of the condition of the intersection in traffic and police department records. Assuming trial court error in excluding the evidence (see *Beauchamp* v. *Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 36-38 [77 Cal.Rptr. 914]), the error is harmless.

City's offer of proof did not describe the city's system of receiving or recording reports of complaints of dangerous traffic conditions. To the contrary, it suggested that there were multiple departments to which reports might be made and that the records encompassed in the offer of proof did not include those of all such departments. The city's offer thus proposed to present evidence that was of little probative value. In that circumstance, we cannot conclude that a miscarriage of justice occurred. It is not reasonably probable that a result more favorable to city would have been reached had the evidence been received. (Cal. Const., art. VI, § 13; *Neilsen* v. *Uyechi* (1959) 172 Cal.App.2d 508, 515-516 [342 P.2d 329].)