[Civ. No. 19073. Third Dist. Dec. 10, 1980.]

VERNON NELSEN, Plaintiff and Appellant, v.
CITY OF GRIDLEY, Defendant and Respondent.

COUNSEL

Matthews & Fuqua and Morey W. Fuqua for Plaintiff and Appellant.

Barr, Minoletti, Newlan & Beasley and Roberta Lee Franklin for Defendant and Respondent.

OPINION

FINNEY, J.*—In the underlying action, plaintiff Vernon Nelsen sued defendant City of Gridley for injuries sustained when he struck a cable stretched across a city-owned paved road while riding his motorcycle. The theory of liability was that the cable constituted a known "dangerous condition" on city property. (See Gov. Code, § 835.) The court granted summary judgment in favor of defendant city on the basis of the immunity provision of section 846 of the Civil Code.[1] Our review of the facts and the law leads us to reverse the judgment of the trial court.

We set forth the facts pertinent to our review as established both in support of and in opposition to the motion for summary judgment:

On Easter Sunday 1977, plaintiff was returning from a drug store on his motorcycle when he entered for the first time what he described as an "extension of Washington Street." He did not recall seeing any warning sign prior to hitting and being injured by a cable barrier stretched across the road.

Washington Street proper borders and provides access to a city park. At the time of the accident the street had been dedicated to public use and accepted into the city's street system.

The accident, however, occurred on a paved extension of Washington Street which was neither dedicated nor formally accepted into the city's street system. Shortly before the dedicated portion of Washington Street ended at its intersection with Locust Street, a "NOT A THROUGH

---

*Assigned by the Chairperson of the Judicial Council.

[1] Unless otherwise indicated, all subsequent statutory references are to the Government Code or Civil Code section 846.

STREET" sign was posted. Beyond the intersection the continuing road narrowed and curved around the park to end at a gate providing access to a city storage facility. The first portion of the road beyond the intersection was on private property; the latter portion was on city property. By oral agreement with the private property owner, the city had a limited right-of-way to use the private portion of the road to reach the storage facility. The city paved both portions of this service road.

The actual cable barrier where the accident occurred was located on the city-owned portion of the service road; it was placed there by city employees and was approximately 590 feet from the intersection of Washington and Locust Streets and approximately 240 feet from the gate to the storage facility. Hanging from the cable was a sign reading "STOP." Adjacent to the cable was a sign on a pole reading "PRIVATE ROAD—KEEP OUT."

Between the sign on Washington Street posting "NOT A THROUGH STREET" and the signs at the location of the cable, no additional signs were posted. Although the city's stated purpose for having the service road was to provide employee access to the storage facility, the city apparently took no steps to prevent the public from using the road up to the point of the cable barrier.

### DISCUSSION

As already noted, summary judgment was founded upon the applicability of the immunity provision of Civil Code section 846. At the time of the accident, that section provided in pertinent part: "An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing, hunting, camping, water sports, hiking, spelunking, *riding, including animal and all types of vehicular riding*, rock collecting, or sightseeing or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes,..." except where liability "...otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purposes was granted for a consideration other than the consideration, if any, paid to said landowner by the state; or (c) to any persons who are expressly invited rather than merely permitted to come upon the prem-

ises by the landowner..."'" (Italics added.) (Stats. 1976, ch. 1303, § 1, p. 5859.)[2]

■ The issue presently before us is whether the general phrase "an owner of any estate in real property," as used in section 846, includes a public entity owner of real property. Utilizing well-established principles for construing legislative intent, we conclude that it does not.

■ "Where a statute is not expressly made applicable to government, it is for the courts to determine whether the Legislature intended it to apply to government." (*People* v. *Centr-O-Mart* (1950) 34 Cal.2d 702, 704 [214 P.2d 378].) The general statute must be read in the context of the purpose for which it was enacted to give it sense and to guard against an application not contemplated by the Legislature. (See 58 Cal.Jur.3d, Statutes, § 90, p. 444.) Unfortunately the Legislature has been silent about its underlying intent in enacting Civil Code section 846. We, however, are aided by recent judicial decisions upholding the constitutionality of the immunity provision by interpreting it to have a legitimate legislative goal of reducing landowner tendency to remove real property from recreational access. (*Parish* v. *Lloyd* (1978) 82 Cal. App.3d 785, 787-788 [147 Cal.Rptr. 431]; *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905].) Although these decisions dealt only with the constitutionality of the section in the context of a private landowner defendant, the *Parish* court found the intent of the Legislature to be specific: to encourage *private* landowners to allow the general public to recreate free of charge on their property. (*Parish*, at p. 788; see also *Smith* v. *Scrap Disposal Corp.* (1979) 96 Cal.App.3d 525, 529 [158 Cal.Rptr.134].)

■ We find the limited purpose of section 846 as expressed in *Parish* to be persuasive. It would make little sense to apply the section's broad immunity to all types of public properties. If, for example, the publicly owned property in question were a city park intended solely as a public recreational facility, a statutory grant of immunity on such property would not further encourage recreational usage. Or, as in the case of a public road the very purpose of which is to provide an avenue for public travel, there would be no rational basis for granting immunity based on the injured person's use of the road for a recreational purpose as opposed to some other purpose.

---

[2]As currently amended, the section limits the duty of care for entry or use by others "for any recreational purpose."

In contrast to the general language of section 846 in the Civil Code, chapter 2 of the California Tort Claims Act (Gov. Code, §§ 830-840.6) sets forth in a rational, specific, and comprehensive manner the duty of public entities to take reasonable precautions to prevent injuries from dangerous conditions on their property subject to specifically stated exceptions and immunities. (See Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.49, pp. 268-270.) Section 830, subdivision (c), clearly defines public property as "real or personal property owned or controlled by the public entity," not including "easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity." Section 835 is the basic statutory provision creating a duty of care under defined circumstances as to dangerous conditions on public property. Exceptions to its provision must be by statute. (§§ 835; 815, subd. (b).) Other specific sections within chapter 2 provide well-outlined exceptions to liability for dangerous conditions on public property often used for recreational purposes in ways that differ from Civil Code section 846.

For example, section 831.2 grants absolute immunity for natural conditions of any unimproved public property, including lakes, streams, bays, rivers, and beaches. In a similar manner, section 831.4, subdivision (a), provides absolute governmental immunity for unpaved roads or any trails, which provide "access to fishing, hunting, camping, hiking, *riding, including animal and all types of vehicular riding*, water sports, recreational or scenic areas...."[3] (Italics added.) Excepted from the section's provisions are, inter alia, city streets and highways. The Senate Legislative Committee comment accompanying sections 831.2 and 831.4 states in part the purpose of these sections in the following unmistakable language: "It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received." (32 West's Ann. Gov.

---

[3]A 1979 amendment to section 831.4 is not relevant to the present appeal.

Code (1980 ed.) pp. 293, 295; see also *County of Sacramento* v. *Superior Court* (1979) 89 Cal.App.3d 215, 219-220 [152 Cal.Rptr. 391].)

In addition, section 831.6 gives absolute immunity for unimproved and unoccupied portions of certain state lands and section 831.8 gives qualified governmental immunity for the artificial conditions of reservoirs and canals. Under the latter, immunity follows only *if the property is used for a purpose other than that for which the public entity intended or permitted the property to be used* and does not follow in certain instances where the person injured is less than 12 years of age.

When viewing these Government Code immunity provisions as a whole, we readily discern an underlying legislative intent parallel to but distinct from that of the Civil Code provision. Within the Tort Claims Act, the Legislature was similarly concerned with the competing interests of making land available for public use and protecting the property owner from liability incurred during such use. However, the Legislature met those concerns with respect to publicly owned land differently. For natural conditions of unimproved public property and unpaved public roads and trails providing access to recreational areas, the Legislature provided *absolute* immunity regardless of the purpose of entry. For certain artificial or improved bodies of water, it qualified the immunity depending on the use (not necessarily recreational) and the age of the user. The Legislature's conspicuous silence as to other types of improved public property appears intentional.

Indeed, the thrust of these specific and comprehensive provisions in the Tort Claims Act is difficult, if not impossible, to reconcile with an interpretation that Civil Code section 846 includes a public entity within its meaning of "an owner of any estate in real property." (Accord, Cal. Government Tort Liability Practice, *supra*, § 3.49, pp. 268-270.)[4] Immunity for publicly owned property when used for recreational purposes would be surplusage except in the context of improved governmental property. Yet as we have seen under section 831.8 of the Tort Claims Act, governmental immunity with respect to dangerous conditions of reservoirs and canals is not contingent upon the permissive use

---

[4]Arvo Van Alstyne, author of California Government Tort Liability Practice (Cont. Ed.Bar 1980), served as a consultant to the California Law Revision Commission during the drafting of the California Tort Claims Act as originally enacted in 1963. (*Id.*, at p. xiii.)

of the property for a recreational purpose. On the contrary, such immunity is contingent upon a use other than that for which the public entity intended or permitted the property to be used; it does not apply at all when use by small children is reasonably foreseeable. (*Hibbs* v. *Los Angeles County Flood Control Dist.* (1967) 252 Cal.App.2d 166, 170-171 [60 Cal.Rptr. 364]; *Cardenas* v. *Turlock Irrigation Dist.* (1968) 267 Cal.App.2d 352, 356-357 [73 Cal.Rptr. 69].)

■ Where general and specific statutory provisions are conflicting, the specific provision prevails over the general one. (*In re James M.* (1973) 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33]; 58 Cal. Jur.3d, Statutes, § 109, pp. 488-491.) Since section 846 cannot occupy the same domain as the governmental immunity sections in the Tort Claims Act without inherent conflict, the special governmental statute must be viewed as excluding from its field the operation of the general civil law. (58 Cal.Jur.3d, *supra*, § 109, p. 491.)

From a historical perspective, we reach the same conclusion that the Legislature did not intend public entities to benefit from section 846 immunity. In the 1963 Regular Session, the California Tort Claims Act, as a package, and Civil Code section 846 were introduced as separate bills and bore different chapter numbers. (Sen. Bill No. 42 [added by Stats. 1963, ch. 1681, § 1, p. 3267] and Sen. Bill No. 639 [added by Stats. 1963, ch. 1759, § 1, p. 3511].) However, because of the similar language and complementary goals embedded in section 831.4 of the Government Code and section 846 of the Civil Code, it is reasonable to presume the Legislature was fully cognizant of one section when enacting the other. (Cf. the phrases "unpaved road which provides access to fishing, hunting or primitive camping, recreational or scenic areas," as used in section 831.4 [Stats. 1963, ch. 1681, § 1, p. 3273] and "entry or use by others for taking of fish and game, camping, water sports, hiking or sightseeing," as used in section 846 [Stats. 1963, ch. 1759, § 1, p. 3511].) Subsequent amendments to the two sections in the 1970 and 1972 Regular Sessions verify such legislative awareness in that the amendments to both sections were passed as a single bill in each respective year and reflect parallel revision of the enumerated recreational purposes. (Sen. Bill No. 291 [Stats. 1970, ch. 807, § 2, p. 1530]; Sen. Bill No. 1450 [Stats. 1972, ch. 1200, § 1, p. 2322].) Had the Legislature intended public entities to benefit from the immunity provided for in section 846, it could have by specific and express language made the section applicable to public entities.

Although section 846 has been a Civil Code provision since 1963, we are aware of no judicial decision prior to 1977 which has given the slightest indication that section 846 applies to public entities. In fact, in a long line of cases, courts have limited the scope of their inquiry with respect to liability for injuries caused by dangerous conditions of public property under the Tort Claims Act to the issue of whether or not the injury was caused by a natural condition of unimproved property (§ 831.2) even though the person injured clearly was engaged in a recreational activity enumerated in section 846, such as water sports or sightseeing. (*Rendak v. State of California* (1971) 18 Cal.App.3d 286 [95 Cal.Rptr. 665]; *Buchanan v. City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338]; *Osgood v. County of Shasta* (1975) 50 Cal.App.3d 586 [123 Cal.Rptr. 442]; *Fuller v. State of California* (1975) 51 Cal.App.3d 926 [125 Cal.Rptr. 586]; *County of Sacramento v. Superior Court, supra*, 89 Cal.App.3d 215.) And where, for example, the dangerous condition of a waterway was clearly unnatural, the Supreme Court has had no difficulty in imposing liability without regard to the specific purpose in using the public property. (*Warden v. City of Los Angeles* (1975) 13 Cal.3d 297 [118 Cal.Rptr. 487, 530 P.2d 175] [submerged sewer pipe].) Similarly, courts long have held a public entity could be liable for injuries caused by dangerous conditions of streets, highways and sidewalks without regard to whether the person when injured was using the street, highway or sidewalk for a recreational purpose. (*Baldwin v. State of California* (1972) 6 Cal.3d 424 [99 Cal.Rptr. 145, 491 P.2d 1121]; *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707 [159 Cal.Rptr. 835, 602 P.2d 755]; *Gardner v. City of San Jose* (1967) 248 Cal.App.2d 798 [57 Cal.Rptr. 176]; *Callahan v. City and County of San Francisco* (1967) 249 Cal. App.2d 696 [57 Cal.Rptr. 639]; *Hilts v. County of Solano* (1968) 265 Cal.App.2d 161 [71 Cal.Rptr. 275]; *Kechter v. City of Downey* (1968) 265 Cal.App.2d 877 [71 Cal.Rptr. 844]; *De La Rosa v. City of San Bernardino* (1971) 16 Cal.App.3d 739 [94 Cal.Rptr. 175]; *Newson v. City of Oakland* (1974) 37 Cal.App.3d 1050 [112 Cal.Rptr. 890]; *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82 [135 Cal.Rptr. 127]; *Levine v. City of Los Angeles* (1977) 68 Cal.App.3d 481 [137 Cal.Rptr. 512]; *Hill v. People* ex rel. *Dept. of Transportation* (1979) 91 Cal.App.3d 426 [154 Cal.Rptr. 142].) The Legislature is presumed to have knowledge of these existing judicial decisions and to have approved them. (58 Cal.Jur.3d, *supra*, §§ 92, 112, pp. 448, 498.)

In 1977, however, *English v. Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725 [136 Cal.Rptr. 224] was decided. *English* held that

Civil Code section 846 was not abrogated by the judicial rule in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], a rule which abolished common law distinctions between a landowner's duty of care according to the status of the injured party as invitee, licensee or trespasser. Instead, the statutory provision prevailed over the judicially declared rule in the *Rowland* case. (*English*, 66 Cal.App.3d at p. 731.) Although the *English* court never addressed the particular issue of whether section 846 applied to a public entity defendant, it apparently proceeded on the assumption that the section was fully applicable to defendant municipal water district.

Then, in 1979, the Second District Court of Appeal confronted for the first time the question of whether the immunity of section 846 related to publicly owned property. (*Moore* v. *City of Torrance* (1979) 101 Cal.App.3d 66 [166 Cal.Rptr. 192].)[5] Without lengthy discussion, the *Moore* court relied on the *English* decision and the presumption that the Legislature knew of this existing judicial decision and held the section applicable to the public entity city. (*Moore*, at p. 72.)

In light of our previous discussion, however, we must respectfully disagree with the *Moore* court's uncritical reliance on the *English* decision. In addition to *Moore's* drastic permutation in the course of the law at this late date, we note that the public entities in the *English* and *Moore* cases probably would not have been liable under the Tort Claims Act based on the facts recited therein. In *English*, the plaintiff was riding his motorcycle on a path or trail onto the defendant's property (*English* v. *Marin Mun. Water Dist., supra*, 66 Cal.App.3d at p. 727); if the trail provided access to a recreational area, the municipal water district likely would have been immune from liability under section 831.4, subdivision (b). (See also Cal. Government Tort Liability Practice, *supra*, § 3.49, pp. 269-270.) In *Moore*, the plaintiff child was injured in a city park while riding his bicycle on an unsupervised and fenced motocross track graded by a private motocross club; the property causing the injury was a wooden jumping ramp placed there by some other children and regarding which the city denied any knowledge. (*Moore* v. *City of Torrance, supra*, 101 Cal.App.3d at p. 69.) The ramp in all probability would not constitute public property as defined in sub-

---

[5]See also *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022 [157 Cal.Rptr. 612] and *Blakley* v. *State of California* (1980) 108 Cal.App.3d 971, 975 [167 Cal.Rptr. 1], where the courts also assumed without discussion that section 846 fully applied to a governmental entity.

division (c) of section 830. (See *ante*, Discussion.)[6] Furthermore, we do not think the Legislature can be presumed to have been cognizant of the isolated *English* decision which never directly dealt with a public entity's inclusion as an owner in section 846.

■ Defendant city also contends that it is immune from liability for plaintiff's injury because of Streets and Highways Code section 1806. Although the trial court did not base summary judgment on section 1806 immunity, we may summarily dispose of the question of law.

Section 1806 of the Streets and Highways Code provides: "No public or private street or road shall become a city street or road until and unless the governing body, by resolution, has caused said street or road to be accepted into the city street system; nor shall any city be held liable for failure to maintain any road unless and until it has been accepted into the city street system by resolution of the governing body."

Suffice it to say that immunity under the above provision lies for *failure to maintain* a road not accepted into a city street system. Such immunity does not lie where the city *undertakes* to create a dangerous condition thereon which exposes those using the public property to a substantial risk of harm. (See *De La Rosa* v. *City of San Bernardino, supra*, 16 Cal.App.3d at p. 746.)

The judgment is reversed.[7]

Regan, Acting P. J., and Reynoso, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 11, 1981. Racanelli, J.,* participated therein. Mosk, J., and Richardson, J., were of the opinion that the petition should be granted.

---

[6]A 1979 federal case as well has held the United States government immunized from liability pursuant to section 846 when a person was injured in a fall to the base of a waterfall while hiking in a national forest. If the case had been brought under the California Tort Claims Act, immunity would have attached pursuant to section 831.2 (natural condition of unimproved public property).

[7]Our judgment of reversal should not be taken to intimate or imply any views on our part as to the appropriate disposition of other issues on remand.

*Assigned by the Chairperson of the Judicial Council.