[Civ. No. 26416. Fourth Dist., Div. One. Feb. 17, 1982.]

ROGER A. KEYES, Plaintiff and Appellant, v.
SANTA CLARA VALLEY WATER DISTRICT et al., Defendants
and Respondents.

COUNSEL

Melvin W. Miller for Plaintiff and Appellant.

Popelka, Allard, McCowan & Jones and James C. Hyde for Defendants and Respondents.

OPINION

**WORK, J.**—Roger A. Keyes appeals a judgment of dismissal after a demurrer was sustained without leave to amend to his complaint based upon personal injuries incurred when he struck a submerged object while swimming and diving in the Lexington Reservoir. Our sole issue is whether Keyes has pleaded facts sufficient to show his cause of action lies outside the breadth of Government Code section 831.2,[1] affording defendants absolute governmental immunity, and within section 831.8 providing for qualified governmental immunity relating to artificial conditions of reservoirs and canals. We conclude, although Keyes has failed to meet his pleading burden, he is entitled to an opportunity to amend.

### Procedural Background

Keyes' complaint contains a single negligence cause of action and names Santa Clara Valley Water District and the County of Santa Clara, among others, as defendants. He claims defendants own and operate the Lexington Reservoir which they made available for recreational use by the general public; it contained numerous submerged logs and other objects creating a dangerous and hazardous condition presenting an unreasonable risk of bodily harm when used with due care in a reasonably foreseeable manner; defendants had actual knowledge of these conditions and knew or should have known of their dangerous propensity; and he was engaged in the reasonable and foreseeable recreational use of the water of the reservoir when, as a proximate result of these hazardous conditions, he struck a submerged object causing severe and permanent personal injuries.

Defendants claim they are immune from liability for injuries resulting from a natural condition of unimproved public property (§ 831.2)

---

[1] All statutory references are to the Government Code unless otherwise specified.

and under Civil Code section 846, (which states an owner of real property has no duty to keep his property safe for entry and use by others for any recreational purpose except when he wilfully fails to guard or warn against a dangerous condition or where permission to enter was granted in exchange for consideration or where a person was expressly invited onto the property.)[2]

### Standards Governing Our Appellate Review

In light of the procedural posture of this case, we review this matter mindful of the established rules which govern our judicial role. ■ "[A] general demurrer admits the truth of all material factual allegations in the complaint." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) The issue of whether plaintiff can prove these allegations is not of our concern; for, "plaintiff need only plead facts showing that he may be entitled to some relief." (*Ibid.*) The allegations are to be liberally construed with a view to substantial justice between the parties. (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) "'[I]t is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment.... *However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion.... Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.* [Citation.]'" (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556, P.2d 737], quoting from *Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627, 626 [75 Cal.Rptr. 766, 451 P.2d 406], italics added.) ■ Since all California governmental tort liability flows from the California Tort Claims Act (§ 810 et seq.; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Galli* v. *State of California* (1979) 98

---

[2] In light of our holding, we do not address the propriety of the defendants' reliance upon the immunity afforded by Civil Code section 846. Whether this section was intended to apply to land publicly held is in dispute, as *Nelsen* v. *City of Gridley* (1980) 113 Cal.App.3d 87 [169 Cal.Rptr. 757], held it was not (see Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.49, pp. 268-270, in accord); while several other appellate courts have concluded to the contrary. (See *Blakley* v. *State of California* (1980) 108 Cal.App.3d 971, 975 [167 Cal.Rptr. 1]; *Moore* v. *City of Torrance* (1979) 101 Cal.App.3d 66 [166 Cal.Rptr. 192]; *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022 [157 Cal.Rptr. 612]; *English* v. *Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725 [136 Cal.Rptr. 224]; see generally, *Simpson* v. *United States* (9th Cir. 1981) 652 F.2d 831, 833.) In any event, Keyes' proposed first amended complaint sufficiently pleads around section 846.

Cal.App.3d 662, 674 [159 Cal.Rptr. 721]), the plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity. (*Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 809 [75 Cal.Rptr. 240]; *Feingold* v. *County of Los Angeles* (1967) 254 Cal.App.2d 622, 625 [62 Cal.Rptr. 396]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 487-492, pp. 2148-2154.) He must plead "with particularity," "[e]very fact essential to the existence of statutory liability." (*Susman* v. *City of Los Angeles, supra,* 269 Cal.App.3d 803, 809.) "[T]he intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." (*Williams* v. *Horvath, supra,* 16 Cal.3d 838.)

## Discussion

Keyes contends the trial court erred in applying section 831.2[3] rather than section 831.8[4] dealing specifically with reservoirs. Keyes mistakenly relies upon semantics rather than the substantive differences in these statutes.

---

[3]Section 831.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

[4]Section 831.8 provides in pertinent part: "(a) Subject to subdivisions (c) and (d), neither a public entity nor a public employee is liable under this chapter for an injury caused by the condition of a reservoir if at the time of the injury the person injured was using the property for any purpose other than that for which the public entity intended or permitted the property to be used.

"(b) Subject to subdivisions (c) and (d), neither an irrigation district nor an employee thereof nor the State nor a state employee is liable under this chapter for an injury caused by the condition of canals, conduits or drains used for the distribution of water if at the time of the injury the person injured was using the property for any purpose other than that for which the district or State intended it to be used.

"(c) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately caused by a dangerous condition of property if:

"(1) The injured person was not guilty of a criminal offense under Article 1 (commencing with Section 552) of Chapter 12 of Title 13 of Part 1 of the Penal Code in entering on or using the property;

"(2) The condition created a substantial and unreasonable risk of death or serious bodily harm when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used;

"(3) The dangerous character of the condition was not reasonably apparent to, and would not have been anticipated by, a mature, reasonable person using the property with due care; and

"(4) The public entity or the public employee had actual knowledge of the condition and knew or should have known of its dangerous character a sufficient time prior to the injury to have taken measures to protect against the condition."

The statutory immunity conferred to public entities by section 831.2 extends "to any natural condition of any lake," regardless whether the latter be natural or artificial. (*Osgood* v. *County of Shasta* (1975) 50 Cal.App.3d 586, 589-590 [123 Cal.Rptr. 442]; *County of Sacramento* v. *Superior Court* (1979) 89 Cal.App.3d 215, 218 [152 Cal.Rptr. 391].) Like Lake Shasta in *Osgood*, the Lexington Reservoir, here, is an artificial, man-made lake created by constructing a dam and used by the public for recreational activities. "Reservoir" is defined as "[a] body of water collected and stored in a natural or artificial lake." (The American Heritage Dict. of the English Language (1979) p. 1106, col. 1.) Statutorily, "'[r]eservoir' means any reservoir which contains or will contain the water impounded by a dam." (Wat. Code, § 6004.5.) Consequently, whether section 831.2 or section 831.8 applies is not to be governed by semantics—the mere naming of a body of water a lake instead of a reservoir.

In order to determine which statute governs a particular factual situation, logically one must first look to the substantive scope of each statute. ■ Generally speaking, section 831.2 codifies an absolute immunity for public entities and their employees regarding injuries caused by natural conditions associated with unimproved publicly held real property, including water bodies and courses. On the other hand, section 831.8 sets forth a qualified governmental immunity for *artificial* conditions arising from man-made water impoundment and distribution improvements and facilities, such as reservoirs, canals, conduits and drains. (*Nelsen* v. *City of Gridley* (1980) 113 Cal.App.3d 87, 93 [169 Cal.Rptr. 757].)[5] The former thus applies to *natural* conditions on *unimproved* realty, while the latter solely applies to *artificial* conditions the product of *man-made improvements*. Within a grey area between the individual breadths of each of these statutes, there exists those water facilities which are the result of the combined acts of men and of nature (see *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926, 938 [125 Cal.Rptr. 586]), such as artificial lakes (*Osgood* v. *County of Shasta, supra*, 50 Cal.App.3d 586, 589-590). As illustrated by Lake Shasta and Lake Arrowhead, these facilities often closely resemble natural resources.

The California tort claims act in general, and section 831.2 in particular, fail to either define or establish "a precise standard for determining when, as the result of developmental activity, public prop-

---

[5]The reservoir immunity applies to all public entities, while only the state and irrigation districts enjoy canal immunity. (§ 831.8, subds. (a) and (b).)

erty in its natural state ceases to be 'unimproved.'" (Van Alstyne, Cal. Government Tort Liability Practice, *supra*, § 3.42, p. 256.) Van Alstyne, in "A Study Relating to Sovereign Immunity," 5 California Law Revision Commission Report (1963) at page 496, discusses in passing the term "undeveloped," defining it as relating to "those portions of public lands intended for recreational uses which are presently being held in their natural state, without substantial artificial improvements or changes except to the extent that such changes are essential to their preservation and prudent management ...." Moreover, in discussing bodies of water, Van Alstyne treats public natural and seminatural water facilities alike. (*Id.*, at p. 494.) It thus cannot be declared that whenever seminatural water facilities, the result of combined acts of man and of nature, have developed and the area "is no longer in the pristine state which it was prior to the population of California, that the Legislature intended such an area to be excluded from the application of section 831.2." (*Fuller v. State of California, supra,* 51 Cal.App.3d at p. 938.)

Case precedent establishes that at least "some form of physical change in the condition of the property at the location of the injury, which justifies the conclusion that the public entity is responsible for reasonable risk management in that area" (Van Alstyne, Cal. Government Tort Liability Practice, *supra*, § 3.42, p. 256) is required. (*Rendak v. State of California* (1971) 18 Cal.App.3d 286, 288 [95 Cal.Rptr. 665]; see *Fuller v. State of California, supra,* 51 Cal.App.3d 926, 937; and cf. *Buchanan v. City of Newport Beach* (1975) 50 Cal. App.3d 221, 226-229 [123 Cal.Rptr. 338].) Of pertinence here, the court in *County of Sacramento v. Superior Court, supra,* 89 Cal.App. 3d 215, at pages 218-220, held a snag in a river flowing near a county park constituted a natural condition of unimproved property even though the water level and flow was controlled by a public dam 15 miles upstream. (Cf. factually, *Larson v. Santa Clara Valley Water Conservation Dist.* (1963) 218 Cal.App.2d 515 [32 Cal.Rptr. 875, 8 A.L.R.3d 665], water skier was injured on an artificial lake (reservoir) by underwater obstructions when the water level was deliberately lowered by the district.) Neither Keyes' complaint nor his proposed amended pleading alleges this necessary element of causal nexus between the dangerous condition and either human conduct or an artificial improvement.

The public policy considerations underlying the absolute immunity provided by section 831.2 support our conclusion here that the Lexing-

ton Reservoir, as characterized by the allegations, be treated as "unimproved," within the purview of section 831.2. The providing for absolute governmental immunity from liability for injuries arising from such facilities would promote the public use of such public property in its natural condition without shackling the governmental entity with "the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries [which] would probably cause many public entities to close such areas to public use." (Sen. Legis. Com. com. to § 831.2.)[6] It would aid in the alleviation of the problem of limited availability of recreational facilities where the public demand is greater than our finite supply of natural recreational resources. By encouraging such public use, it would in turn discourage a public entity from ever permitting people to use improvements within the meaning of section 831.8 for recreational purposes where the conditions and intended purpose of such property may not be fully consistent with public safety.[7] Finally, the legislative history of section 831.2 shows the Legislature rejected a limited immunity for artificial lakes, streams, bays and rivers in favor of an unconditional immunity. (*Osgood* v. *County of Shasta, supra,* 50 Cal.App.3d 586, 590; *County of Sacramento* v. *Superior Court, supra,* 89 Cal.App.3d 215, 218.)

■ Moreover, Keyes has failed to allege facts from which a reasonable inference can be drawn the dangerous condition was artificial in

[6]Van Alstyne noted in "A Study Relating to Sovereign Immunity," 5 California Law Revision Commission Report, *supra,* at pages 494: "certain types of physical hazards, such as steep and slippery banks along a lake or stream, unusual depressions worn in a beach by the action of waves, or the presence of underwater rocks with jagged edges, may be difficult or impossible to remove, modify or correct; or the cost of doing so, even where not impossible, may be wholly out of proportion to the benefits to be derived therefrom. It would seem to follow that a reasonable degree of immunity from tort liability arising out of dangerous or defective conditions of public property usable for aquatic recreation may be advisable in order not to interfere with or discourage optimum use of scarce water resources devoted to recreational uses."

[7] Public entities are authorized to make reservoirs available for recreational purposes under specified conditions. Health and Safety Code section 4050 provides: "It is hereby declared to be the policy of this State, that multiple use should be made of all public water within the State, to the extent that such multiple use is consistent with public health and public safety. 'Multiple use,' as used in this section, includes domestic, industrial, agricultural, and recreational uses. [¶] As used in this chapter 'recreational uses' shall not, with respect to a reservoir in which water is stored for domestic use, include recreation in which there is bodily contact with the water by any participant."

Further, Health and Safety Code section 4051 states: "All water supply reservoirs of a public agency, whether heretofore or hereafter constructed, shall be open for recreational use by the people of this state, subject to the regulations of the State Department of Health Services."

And finally, Health and Safety Code section 4052 defines "reservoir" as "not includ-[ing] ditches, canals or any similar type of water distributing facility."

character. Although he asserts in his response to the defendants' opposition to his motion for reconsideration that he has alleged an injury "caused by an artificial condition," both his original complaint and his proposed first amended complaint are silent in this regard. In light of the particularity of his pleading burden, we cannot assume either the submerged log or object was an artificial condition.

However, in light of the delicate nature of pleading governmental liability due to the constant evolution of case precedent construing the California tort claims act and the fact Keyes was denied an opportunity to amend his complaint (besides attaching a proposed first amended complaint to his motion for reconsideration), we conclude fairness compels he be allowed to amend his complaint to allege facts showing his injury was caused by an artificial condition, if he can do so in good faith. Consideration of Keyes' assertion he intended to plead an artificial condition leads us to conclude there is a reasonable possibility this defect may be cured by amendment. (*Larwin-Southern California, Inc.* v. *JGB Investment Co.* (1979) 101 Cal.App.3d 626, 635 [162 Cal.Rptr. 52].)

Judgment reversed; upon remittitur, plaintiff shall have 20 days to file an amended complaint.

Cologne, Acting P. J., and Staniforth, J., concurred.