[L.A. No. 31611. Oct. 31, 1983.]

BENELLA MILLIGAN et al., Plaintiffs and Appellants, v.
CITY OF LAGUNA BEACH, Defendant and Respondent.

**COUNSEL**

Layman, Jones & Dye, Layman, Hanson, Jones & Voss, Stanley R. Jones, Frederick B. Sainick, Anne E. Klokow and Hufstedler, Miller, Carlson & Beardsley for Plaintiffs and Appellants.

Kinkle, Rodiger & Spriggs and A. J. Pyka for Defendant and Respondent.

George Deukmejian, Attorney General, N. Gregory Taylor, Assistant Attorney General, Peter H. Kaufman and Jamee J. Jordan, Deputy Attorneys General, John W. Witt, City Attorney (San Diego), Ronald L. Johnson, Chief Deputy City Attorney, and John W. Wood, Deputy City Attorney, as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**BROUSSARD, J.**—In a bifurcated trial based on stipulated facts, the trial court concluded that Government Code section 831.2, which immunizes

public entities for injuries caused by natural conditions of unimproved public property, precluded recovery of damages from the City of Laguna Beach.[1] Plaintiffs appeal the ensuing judgment.

We have determined that the immunity is applicable only to users of the governmental property and is inapplicable to injuries caused to nonusers on adjacent property, as occurred here. Accordingly, we reverse the judgment.

During a storm, several eucalyptus trees growing on the city's property fell causing injury to plaintiffs' residence which was on adjacent property. Plaintiffs commenced this action for damages to their home and for emotional distress. They alleged that the city had maintained the trees in a dangerous condition. (§ 835.) The city among other defenses claimed that it was immune from liability under section 831.2, and the trial court tried the immunity issue first.

Section 831.2 is part of the Tort Claims Act of 1963 (§§ 810-996.6), which established governmental liability and immunity for tortious acts. The section provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

■ When questions as to the applicability or interpretation of statutes are presented to this court, numerous cases have recognized that the controlling issue is the intent of the Legislature. (E.g., *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 609 [189 Cal.Rptr. 871, 659 P.2d 1160]; *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732 [114 Cal.Rptr. 460, 523 P.2d 260]; *People* v. *Superior Court* (1969) 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230].) To ascertain the legislative intent, courts have resorted to many rules of construction. ■ However, when the Legislature has stated the purpose of its enactment in unmistakable terms, we must apply the enactment in accordance with the legislative direction, and all other rules of construction must fall by the wayside. Speculation and reasoning as to legislative purpose must give way to expressed legislative purpose.

In connection with the enactment of the Tort Claims Act, the Senate Committee on the Judiciary and the Assembly Committee on Ways and Means (2 Sen.J. (1963 Reg. Sess.) p. 1885; 3 Assem.J. (1963 Reg. Sess.) p. 5439) formally adopted comments explaining the purpose and effect of the provisions to be enacted. In *Baldwin* v. *State of California* (1972) 6

---

[1] All statutory references are to the Government Code.

Cal.3d 424, 433 et seq. [99 Cal.Rptr. 145, 491 P.2d 1121], this court held that the committees' explanation determined the applicability of the design immunity established by section 830.6.

As in *Baldwin,* we must determine the applicability of an immunity section which does not expressly deal with the situation before the court. Section 830.6 providing for design immunity did not contain any language indicating that the immunity could terminate on the basis of changed conditions, just as section 831.2 does not contain any language expressly determining whether the natural condition immunity applies to injuries to nonusers on adjacent property. The committees' reports on section 831.2, like those in *Baldwin,* were joint reports made to explain to the legislators the meaning and purposes of the provisions of the natural condition immunity. In *Baldwin* we held the measure of the immunity was determined by the committees' comment and that design immunity was not applicable where there were changed conditions after approval of the design. Following *Baldwin,* we apply the natural condition immunity in accordance with the expressed purpose and refuse to apply it when application would not further the expressed purpose.[2] •

The legislative committees' comment to section 831.2 provides: "This section provides an absolute immunity from liability for injuries resulting from a natural condition of any unimproved public property. Thus, for example, under this section and Section 831.4, the State has an absolute immunity from liability for injuries resulting from natural conditions of a state

---

[2]*Baldwin* explained why committee comments limiting an immunity are given effect when the language of the code section did not contain language limiting the immunity: "[W]e think that our present construction of section 830.6 more accurately reflects the considerations of public policy which have guided judicial interpretations of governmental tort immunity since our decision in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]. In *Muskopf,* we abrogated the common law rule of governmental immunity, observing that 'when there is negligence, the rule is liability, immunity is the exception.' *(Id.* at p. 219.) Our decisions since the adoption of the Tort Claims Act of 1963 (§§ 810-996.6) have adhered to this basic axiom of tort law. Thus, we have pointed out that 'courts should not casually decree governmental immunity . . .' *(Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352]), and that '[u]nless the Legislature has clearly provided for *immunity,* the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail.' *(Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93].) (Italics added.) Since, as we have outlined above, the Legislature has clearly provided for *liability* where the public entity permits continued dangerous operation of a public improvement in the face of changed conditions we would frustrate both its intention and public policy if we followed *Cabell* and *Becker.*" (Fn. omitted.) (6 Cal.3d at pp. 435-436.)

*Cabell* v. *State of California* (1967) 67 Cal.2d 150 [60 Cal.Rptr. 476, 430 P.2d 34, 34 A.L.R.3d 1154] and *Becker* v. *Johnson* (1967) 67 Cal.2d 163 [60 Cal.Rptr. 485, 430 P.2d 43] had held that design immunity would be applied notwithstanding changed conditions. *Baldwin* overruled the cases. (6 Cal.3d at p. 439.)

park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails.

"This section and Section 831.4 continue and extend an existing policy adopted by the Legislature in former Government Code Section 54002. It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received."[3]

 The legislative policy underlying the immunity is clear. It is desirable to permit public use of governmental property but governmental agencies might prohibit such use if they were put to the expense of making the property safe, responding to tort actions, and paying damages. The comment concludes by pointing out the shortage of funds for improving property for recreational use and the fairness of requiring users to assume the risk of injury. The comment did not state that in the absence of the immunity the costs to public agencies would be prohibitive. The statement as to cost is limited to the perception that cost might cause agencies to close their property to the public.

It is apparent that the policy has nothing to do with an injury sustained by an adjacent landowner from a tree on government land. The governmental agency may not preclude landowners from using their land, and immunity is not necessary to assure that landowners are permitted to use their land. Moreover, nonusers of the government land do not receive the reciprocal benefit of use, and the principle of fairness has no application. Since the policy on which the immunity is based is not applicable to injuries occurring to nonusers on adjacent land, the immunity should not be applicable.

The natural condition immunity was applied in accordance with the express legislative declaration in *Osgood* v. *County of Shasta* (1975) 50 Cal.App.3d 586, 589-590 [123 Cal.Rptr. 442]. In that case a water skier

---

[3]Section 831.4 provides immunity under certain conditions for injuries due to the condition of trails and certain roads providing access to unimproved property. Former section 54002 referred to accidents on bridle paths.

was killed on Lake Shasta, and recovery was sought on the ground that the configuration of the lake, its coves and inlets impairing visibility, constituted a hazardous condition when used with due care by boaters and water skiers. Although the lake is an artificial one, it was held that the condition complained of was a natural condition common to most if not all lakes and that the natural condition immunity was applicable. (50 Cal.App.3d at p. 590.) Obviously, if the immunity was held inapplicable, the legislative purpose underlying the immunity might be defeated because the governmental agencies might close the lake to boaters and water skiers to avoid the costs of tort liability.

In accordance with the purpose expressed in the legislative comment, we conclude that while the natural condition immunity may be applicable when the decayed tree limb falls on a user of the governmental property, it is not applicable when the limb injures adjacent property or persons on adjacent property because there is no danger that the governmental agency will close the property to use.

It is pointed out that section 831.2 does not contain any language exempting nonusers, but section 830.6 considered in *Baldwin* did not contain any language providing for an exception for changed circumstances. Just as this court in *Baldwin* gave effect to the legislative comment explaining the immunity, we do so now with respect to section 831.2.

The city also points out that an earlier version of the bill permitted immunity only "if at the time of the injury the person who suffered the injury was not using the property for a purpose for which the public entity intended the property to be used." (Amend. to Sen. Bill No. 42 (1963 Reg.Sess.) Mar. 19, 1963.) The deletion of this language does not show that the Legislature intended the immunity to apply to nonusers of the government property. Under the quoted language the immunity would apply only to unintended users, and it is clear from the committees' comment that the immunity was to be broadened to apply to all users whether intended users or unintended users. The comment points out that the immunity is "absolute," and there is nothing in the section or comment indicating that the immunity is conditional on type of use. (*Osgood* v. *County of Shasta, supra,* 50 Cal.App.3d 586, 590; see 4 Cal. Law Revision Com. Rep. (1963) p. 220.) While the change in the language shows that the immunity was to be broadened to apply to all users, there is nothing to indicate that the immunity was also to be made applicable to nonusers.

Reliance is placed on the language of section 830 which defines "dangerous condition" as "a condition of property that creates a substantial . . . risk of injury when such property or adjacent property is used with due care

. . . ." It is urged that because the liability provision refers to both public and adjacent property, the immunity provision should also apply to both. However, neither symmetry nor self-cancellation is necessary in the adoption of code sections. Rather, each section reflects a legislative policy. Only when the policies are symmetrical may we expect the code sections to be symmetrical. Here the policies are not symmetrical. The Legislature did not state that liability for natural conditions would impose too great a burden on governmental agencies warranting an immunity commensurate with the liability; it stated that it granted immunity because it feared that without immunity agencies would prohibit recreational use of their property.

Finally, a "possible explanation" is suggested as to why section 831.2 did not specifically refer to injuries on adjacent property due to natural conditions, namely, that in 1963 when the section was enacted a possessor of land whether private or public was not liable for injuries due to natural conditions. The "possible explanation" militates in favor of liability—not immunity—because the basic rule is that "unless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail." (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93].) Lack of legislative consideration provides no basis for finding immunity.

In any event, attempts to determine legislative intent on the basis of language deleted from a bill, of symmetry, or of a "possible explanation," must fail when the Legislature has expressly set forth its purpose, as it has done here.

We conclude that the natural condition immunity of section 831.2 is inapplicable to injuries caused to nonusers on adjacent property. This conclusion makes it unnecessary to reach the question whether the eucalyptus trees constituted a natural condition.

The judgment is reversed.

Bird, C. J., Mosk, J., Reynoso, J., and Grodin, J., concurred.

**KAUS, J.**—I concur in the result. I respectfully suggest that the issue whether section 831.2 immunity applies to nonusers of public property is irrelevant. The immunity affects only liability for injury caused by natural conditions. It is, however, undisputed that the eucalyptus trees involved in this case were, in contemplation of law, an artificial condition. The parties stipulated that "eucalyptus trees are not native to California" and that "plaintiff's expert will testify that the trees were planted by man." No other

evidence on the point was introduced. In *Coates* v. *Chinn* (1958) 51 Cal.2d 304, 308 [332 P.2d 289], we said: "The eucalyptus trees planted alongside the highway constituted 'a nonnatural or artificial condition' created on the land as distinguished from a 'natural condition' of the land, 'irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces.' (Rest., Torts, § 363, com. b.)"[1]

Since the judgment below was based on an immunity which simply does not apply to the facts of this case, I join in the reversal.

**RICHARDSON, J.**—I respectfully dissent.

Government Code section 831.2 (further statutory references are to that code) immunizes public entities from tort liability for injuries resulting from a natural, though dangerous, condition of unimproved public property. The section provides "Neither a public entity nor a public employee is liable for the injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." In my view, defendant (City) was immune from liability to plaintiffs under the foregoing provision.

Plaintiffs, adjoining private property owners, were neither using, nor present upon, City's property when the incident occurred. The majority holds that section 831.2 was not intended to bar suit by nonusers of public property who are injured on adjacent private land. The majority relies primarily upon a statement in the legislative committee comment that "it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for the benefits received." (See legis. committee com., Deering's Ann. Gov. Code, § 831.2 (1982 ed.) p. 251.) According to plaintiffs (though not expressly included in the stipulation of facts), the injury they received was to their home and they received no "benefits" from any prior use of City's land.

By its terms, however, section 831.2 extends immunity to *any injury* caused by a natural condition of unimproved public property, whether or

---

[1]Comment b to section 363 of the Restatement Second of Torts reads as follows: "b. *Meaning of 'natural condition of land.'* 'Natural condition of the land' is used to indicate that the condition of land has not been changed by any act of a human being, whether the possessor or any of his predecessors in possession, or a third person dealing with the land either with or without the consent of the then possessor. It is also used to include *the natural growth of trees,* weeds, and other vegetation upon land not artificially made receptive to them. On the other hand, a structure erected upon land is a non-natural or artificial condition, *as are trees or plants planted or preserved,* and changes in the surface by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces." (My italics.)

not the injury was received on public or private property or during the course of a nonpublic use. Had the Legislature intended to restrict the immunity in such a manner, it could have easily so provided. Indeed, an earlier version of the bill which incorporated section 831.2 permitted immunity only "if at the time of the injury the person who suffered the injury was not using the property for a purpose for which the public entity intended the property to be used." (Amend. to Sen. Bill No. 42 (1963 Reg. Sess.) Mar. 19, 1963.) This language, however, was expressly deleted from the section as adopted. (See also §§ 831.4, 831.8, containing similar specific use limitations.)

Moreover, fairly read, other statutory language surrounding section 831.2 persuades me that the section's immunity precludes whatever liability a public entity might otherwise incur under the Tort Claims Act for dangerous conditions of its property. For example, section 835 imposes liability, except as provided by statute, for injury "caused by a dangerous condition of its property . . . ." The term "dangerous condition" is defined as "a condition of property that creates a substantial . . . risk of injury when such property *or adjacent property* is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a), italics added.) Overhanging trees are included by the Law Revision Commission comment to section 830 as a typical example of a hazard to adjacent property. (See Cal. Law Revision Com. com., Deering's Ann. Gov. Code, § 830, *supra,* p. 222.)

Immediately following section 830 and its definition of "dangerous condition" and other statutory terms, are various exceptions and immunities from liability. Section 831.2 clearly represents an exception to the general rule of liability for dangerous conditions which result in injuries on public or adjacent private property. Accordingly, it would be anomalous to construe the immunity provision in a narrower manner than the liability itself, thereby providing only partial immunity where an "absolute immunity" (legis. committee com., Deering's Ann. Gov. Code, § 831.2, *supra,* at p. 251) was undoubtedly intended.

I also note a possible explanation why section 831.2 did not specifically immunize public entities from liability for "natural condition" injuries occurring on adjacent private property: Prior to our recent decision in *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358 [178 Cal.Rptr. 783, 636 P.2d 1121], a possessor of land, public or private, had no duty to remedy dangerous natural conditions which endangered persons outside his premises. (*Id.,* at p. 362.) Thus, in 1963 when section 831.2 was adopted, there

was no need to provide immunity against a liability which at that time had not been recognized.

For all the foregoing reasons, I would affirm the judgment in City's favor.