632 A.2d 535

THOMAS BANY AND MIREILLE BANY, PLAINTIFFS–APPELLANTS, v. BOROUGH OF HAWORTH, DEFENDANT–RESPONDENT, AND F & F PAVING, INC., DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued September 22, 1993—Decided October 21, 1993.

Before Judges GAULKIN, R.S. COHEN and D'ANNUNZIO.

*James A. Crawford* argued the cause for appellants (*Crawford & Halligan,* attorneys; *Mr. Crawford,* on the brief).

*John J. Robertelli* argued the cause for respondent (*Harwood Lloyd,* attorneys; *Thomas B. Hanrahan,* of counsel; *Mr. Robertelli,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

In this personal injury action plaintiffs appeal from a summary judgment in favor of defendant, Borough of Haworth.[1]

The borough owns a lot located across the street from plaintiff's home on Sylvan Place. The lot is 100 feet square, and the borough acquired it in 1947 by "foreclosure." The lot is wooded and otherwise unimproved.

On the morning of December 31, 1990, plaintiff, Thomas Bany (hereinafter Thomas) was struck by a falling tree. In his certification in opposition to the borough's motion for summary judgment, Thomas stated:

> I went to the curb to pick up some garbage. On my way back to the car to get my coffee, the very tree that I had so often complained of, in good weather, crashed over onto me and knocked me to the ground in the apron of my driveway.

In his certification, Thomas also stated that on five occasions between 1985 and the date of his injury, he had informed the borough that the tree which eventually struck him was dying and leaning over Sylvan Place. According to Thomas, the tree was on the borough's lot a mere three feet from the road. Thomas also stated that between 1985 and his injury, increasingly larger areas of the tree became leafless.

In its answers to plaintiffs' interrogatories, the borough conceded that "[t]he roots of the tree disclosed that the tree had died of natural causes and the tree had been unable to support itself." The borough, however, denied receiving a complaint, warning or notice regarding the tree that fell on Thomas.

An investigating police officer filed a report stating that he "observed a tree laying across the road with power lines down across the roadway." He observed Thomas "on the ground in the driveway ... positioned behind the rear of his vehicle with the tree approximately 3 feet away."

---

[1] Plaintiffs voluntarily dismissed the complaint as to defendant F & F Paving, Inc.

The trial court granted summary judgment on the ground that *N.J.S.A.* 59:4-8 (hereinafter section 4-8) blanketed the borough with immunity. That statute provides:

> Neither a public entity nor a public employee is liable for an injury caused by a condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach.

We now reverse.

The comment to section 4-8 and *N.J.S.A.* 59:4-9 contained in *Report of the Attorney General's Task Force on Sovereign Immunity* (1972) (hereinafter *Task Force* ) explains the legislative purpose:

> Sections 59:4-8 and 59:4-9 reflect the policy determination that it is desirable to permit the members of the public to use public property in its natural condition and that the burdens and expenses of putting such property in a safe condition as well as the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property to assume the risk of injuries arising therefrom as part of the price to be paid for benefits received. A similar statutory approach was taken by the California Legislature. Cal. Gov't Code § 831.2, § 831.4, and § 831.6.

*Task Force,* at 223–24. *See Troth v. State,* 117 *N.J.* 258, 272, 566 *A.*2d 515 (1989) (legislature's purpose in enacting section 4-8 is to encourage use of unimproved recreational property at users' own risk).

Thomas was not a user of the unimproved lot when he was injured. Thomas was located off the lot either on a public road or on his own property. Thus, the "legislature's avowed purpose of encouraging the public to use unimproved recreational property at its own risk," *ibid.,* is not thwarted by not applying section 4-8 to the present case. We conclude, therefore, that the section 4-8 immunity is not applicable.

The California Supreme Court reached the same conclusion in *Milligan v. City of Laguna Beach,* 34 *Cal.*3d 829, 196 *Cal.Rptr.* 38, 670 *P.*2d 1121 (Cal.1983). Plaintiffs in *Milligan* sustained damage when several eucalyptus trees located on the city's property fell and struck plaintiffs' home. The city claimed that it was immune under section 831.2 of the Tort Claims Act of 1963 which is almost

identical to section 4–8. The only difference between the two statutes is that the California statute applies only to "natural" conditions of unimproved public property. Despite the breadth of the language of section 831.2, the Court concluded that the immunity was not applicable to non-users of the unimproved government property because the immunity effects a policy decision to encourage government agencies to permit public use of unimproved property. *Id.* 196 *Cal.Rptr.* at 41–42, 670 *P.*2d at 1124–25. The Court reasoned that "the policy has nothing to do with an injury sustained by an adjacent landowner from a tree on government land." *Id.* 196 *Cal.Rptr.* at 41, 670 *P.*2d at 1124.

We find *Milligan*'s rationale persuasive; it is consistent with the policy objective of section 4–8. *See Chatman v. Hall,* 128 *N.J.* 394, 411, 608 *A.*2d 263 (1992) (New Jersey Tort Claims Act is patterned on the California Act).

We are also persuaded that the *Milligan* rationale applies though Thomas may have been on the public road when the tree struck him. Sylvan Place is a public road built and maintained for general use and not built specifically and exclusively to provide access to the borough's lot. Thus, the rationale of section 4–8 immunity, encouragement of public agencies to open unimproved lands to public use, is not applicable to Sylvan Place. Indeed, though we need not resolve the issue, it is questionable whether section 4–8 would apply even if the injury were caused by a hazardous condition of a public road on otherwise unimproved public property. *See Troth, supra,* 117 *N.J.* at 272, 566 *A.*2d 515, in which the Court held that a dam located in a wilderness area is improved public property to which section 4–8 does not apply, though the recreational lake it created is unimproved property. A public road, like a dam is a "substantial physical modification ... [which] creates hazards that did not previously exist and that require management by the public entity." *Id.* at 269–70, 566 *A.*2d 515.

■ We also conclude that section 4–8 by its express language does not apply to this case. To the extent that the tree was

located on the unimproved lot it was a condition of unimproved property. If the tree had fallen into the lot and not across the road, then section 4–8 would apply. However, because the tree was adjacent to the road, a conceded fact, it would be a hazard to the traveling public if it fell across the road. Therefore, the tree was also a condition of *improved* public property, *i.e.*, the road, and section 4–8 would not shield the borough from liability for an injury caused by that condition.

We emphasize that we do not decide that the borough is liable. Plaintiffs would have to establish liability under the New Jersey Tort Claims Act. Nor are we deciding or even addressing the applicability of other immunities. We merely determine that section 4–8 immunity is not applicable on the uncontradicted facts of this case.

Reversed and remanded for further proceedings.