

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-26-1995

# Kowalsky v. Long Beach Twp., et al.

Precedential or Non-Precedential:

Docket 95-5067

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Kowalsky v. Long Beach Twp., et al." (1995). *1995 Decisions.* Paper 319.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/319

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 95-5067

————————

ROMAN KOWALSKY,
                Appellant

v.

LONG BEACH TOWNSHIP;
DEPARTMENT OF PUBLIC WORKS OF LONG BEACH TOWNSHIP;
DEPARTMENT OF PUBLIC SAFETY OF LONG BEACH TOWNSHIP;
LONG BEACH TOWNSHIP BEACH PATROL;
LONG BEACH TOWNSHIP SPRAY BEACH PATROL;
JOHN DOES, 1 THROUGH 5, JOINTLY,
SEVERALLY AND IN THE ALTERNATIVE;
DONALD MEYERS; JON CAMP; SEAN ADAMS;
PATTY O'HARA; MICHAEL GAETANO; DON WILLIAMS

————————

No. 95-5078

————————

GARY S. PETRILLO, Individually,
LOIS PETRILLO, Conservator of the Estate
and person of Gary S. Petrillo, and individually,
JILL S. PETRILLO,
                Appellants
v.

BOROUGH OF SURF CITY,
A Municipality of the State of New Jersey,
LEONARD T. CONNOR, Mayor,
JOHN DOES "A,B,C," JANE DOES "D,E,F,"
Elected and Appointed Officials of the
Borough of Surf City, these being fictitious names,
their actual names not known to the plaintiffs,
MARK OCCHIPINTI, PATRICIA D'AMBROSIO, FIN LEALIN,
JOHN DOES "G,H,I," Lifeguards, JANE DOES "J,K,L,"
Lifeguards employed by the Borough of Surf City,
and correct name of Lealin and the actual names
of the fictitious John Does G,H,I and Jane Does J,K,L,
not being known to the plaintiffs at this time,

1

DEPARTMENT OF RECREATION OF SURF CITY,
SURF CITY BEACH PATROL,
DEPARTMENT OF PUBLIC WORKS OF SURF CITY,
DEPARTMENT OF LAW & PUBLIC SAFETY OF SURF CITY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action Nos. 92-cv-03194 & 92-cv-03602)

_____

Argued September 12, 1995

Before:  MANSMANN, SCIRICA and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Filed  December 26, 1995)

JOHN A. MILLER, ESQUIRE (ARGUED)
RICHARD J. SEXTON, ESQUIRE
Kenney & Kearney
220 Lake Drive East
Woodland Fall Corporate Park, Suite 210
Cherry Hill, New Jersey 08034-0421

Attorneys for Appellant,
  Roman Kowalsky


JOHN J. BARRY, ESQUIRE (ARGUED)
MADELINE E. COX, ESQUIRE
Barry & McMoran
One Newark Center, 18th Floor
Newark, New Jersey 07102

Attorneys for Appellants,
  Gary S. Petrillo, Individually,
  Lois Petrillo, Conservator of the Estate
  and person of Gary S. Petrillo, and individually,
  Jill S. Petrillo


MICHAEL J. McKENNA, ESQUIRE (ARGUED)
RONALD E. HOFFMAN, ESQUIRE
Hiering, Hoffman & Gannon
29 Hadley Avenue
P.O. Box 5258
Toms River, New Jersey 08754

Attorneys for Appellees

---

OPINION OF THE COURT

---

SCIRICA, <u>Circuit</u> <u>Judge</u>.

In these diversity suits, plaintiffs Roman Kowalsky and Gary Petrillo appeal the district court's grants of summary judgment on their claims for damages arising from tragic injuries suffered while they were swimming at New Jersey beaches.[0] Because we agree with the district court that under the New Jersey Tort Claims Act, defendants, municipal entities and municipal employees, are entitled to immunity from liability as a matter of law, we will affirm.

I.

A.

During mid-afternoon on September 2, 1990, Roman Kowalsky entered the ocean to go swimming at Spray Beach in Long Beach Township, New Jersey, an area protected at the time by municipal lifeguards. After swimming and "bodysurfing" in the water for twenty minutes, he decided to return to the beach. "Bodysurfing" to shore, he was caught between two waves and driven into the sand.[0] Although a lifeguard quickly reached Kowalsky and summoned an ambulance, he had already suffered a broken neck, resulting in permanent paralysis below the waist.

[0]1.  These cases were brought separately but decided by the same district court, and were consolidated on appeal.
[0]Kowalsky explained: "[a]s I rode the wave in, as I got towards the beach another wave was receding.  Between that wave and the wave on top of me, it bent me over and pile d[r]ived my head into the beach."  Brief for Appellant at 7.

Although Kowalsky said that when he arrived at the beach the surf looked normal and no different from other visits, he contends the water conditions were hazardous, resulting from Hurricane Gustav, 1000–1200 miles offshore. He maintains that because of the hurricane, an unusually high number of rescues occurred over that Labor Day weekend. Both the lifeguard on duty and the beach supervisor testified the weather was sunny and dry, the surf normal for that time of year and there was no reason to close the beach or prohibit bodysurfing.

Kowalsky's amended complaint alleged that defendants, various municipal entities and certain municipal employees: (1) negligently supervised the beach; (2) failed to warn of a dangerous condition; and (3) failed to properly train beach patrol personnel. Defendants denied negligence and asserted immunity under the New Jersey Tort Claims Act. N.J. Stat. Ann. §59:1-1 et seq. (West 1992 & 1995 Supp.). The district court granted summary judgment to all defendants.[3]

B.

On a sunny afternoon on September 1, 1990, Gary Petrillo was swimming and "bodysurfing" in the ocean at the 12-14th Street Beach in Surf City, New Jersey. After forty minutes

---

[3] Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when the pleadings, answers and supporting material show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Our review of a district court's grant of summary judgment is plenary. See Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1177 (3d Cir. 1994).

he became cold and decided to head ashore.  While hip-deep in the water he was struck from behind by a wave that knocked him face first into the sand.  Realizing he could not move, he remained lying on his back in the water.  The attending lifeguard called for assistance and Petrillo was taken by ambulance and helicopter to a hospital.  As a result of his injury Petrillo remains paralyzed from the neck down and has lost the power of speech.

Petrillo contends that Hurricane Gustav, 1000-1200 miles offshore, had created turbulent water along the New Jersey coast, resulting in hazardous conditions.  He maintains that despite knowing the danger, the beach patrol failed to warn the swimmers or close the beaches.  Petrillo's complaint alleged that his accident was caused "jointly, severally or in the alternative by the negligence, recklessness and carelessness" of defendants, various municipal entities and employees of these entities.  His mother, Lois Petrillo, and his sister, Jill Petrillo, alleged emotional distress stemming from the accident.  Defendants denied negligence and asserted immunity under the New Jersey Tort Claims Act.  The district court granted summary judgment to all defendants.

II.

The central issue presented by these appeals is the nature and scope of immunity conferred upon defendant municipal entities and municipal employees by New Jersey's Tort Claims Act, which governs damage claims against public entities and public employees.  In particular dispute is N.J.S.A. 59:4-8, which confers immunity from liability for injuries caused by a

6

condition of unimproved public property.  Defendants assert they are entitled to immunity under this provision.  Kowalsky and Petrillo maintain the public property at issue is "improved," making N.J.S.A. 59:4-8 immunity inapplicable.  In the alternative, they contend that N.J.S.A. 59:4-8 does not bar their claims for negligent supervision and failure to warn.

In adjudicating a case under state law, we must predict how the highest court of that state would decide the relevant legal issues.  See Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1049 (3d Cir.), *cert. denied*, 114 S. Ct. 440 (1993).  Our review of the district court's determination of state law is *de novo*.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); see also Acierno v. Cloutier, 40 F.3d 597, 609-10 (3d Cir. 1994) (in banc).  Consequently, we turn to the Tort Claims Act as well as New Jersey case law to evaluate the claims raised in this appeal.

III.

The New Jersey Tort Claims Act sets forth the parameters of immunity for government officials and government acts.  The introductory section of the Act declares:

> [We] ... recognize[] the inherently unfair
> and inequitable results which occur in the
> strict application of the traditional
> doctrine of sovereign immunity.  On the other
> hand [we] ... recognize[] that while a
> private entrepreneur may readily be held
> liable for negligence within the chosen ambit
> of his activity, the area within which
> government has the power to act for the
> public good is almost without limit and
> therefore government should not have the duty

7

> to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration.

N.J.S.A. 59:1-2.

As part of the Tort Claims Act, the New Jersey Legislature promulgated N.J.S.A. 59:4-8, which provides:

> [n]either a public entity nor a public employee is liable for an injury caused by a condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach.

Both the comment to N.J.S.A. 59:4-8 and the New Jersey Supreme Court make clear that "the term unimproved public property should be liberally construed." Troth v. State, 566 A.2d 515, 518 (N.J. 1989); see also Comment to N.J.S.A. 59:4-8&9 ("it is intended ... that the term unimproved public property should be liberally construed"). Underlying these determinations is the New Jersey Legislature's policy judgment that the public should be permitted to use unimproved public property in its natural condition, but under the cloak of immunity. Otherwise, the burdens and expenses of putting such property in safe condition as well as the expense of defending claims for injuries might cause public entities to close these areas to public use altogether. See Troth, 566 A.2d at 519-20; Report of the Attorney General's Task Force on Sovereign Immunity (May 1972).

8

In its clearest statement of the standard guiding a determination of whether property remains "unimproved" under N.J.S.A. 59:4-8, the New Jersey Supreme Court explained "[p]ublic property is no longer 'unimproved' when there has been substantial physical modification of the property from its natural state, and when the physical change creates hazards that did not previously exist and that require management by the public entity." Troth, 566 A.2d at 521.

## A.

Our starting point for determining whether the properties at issue here remain "unimproved" is to identify the relevant properties. In Troth, the plaintiff's injury occurred after falling over a spillway in a boat on Union Lake, which lies at the southern tip of a wildlife-management area belonging to New Jersey. The lake was created by a dam built in the nineteenth century, which allows excess water to flow over a spillway into an adjacent river. The plaintiff in Troth alleged the conditions created by the dam and the spillway resulted in water flow rates dangerous to boats, and that these conditions caused the accident. The state contended the lake was unimproved public property and therefore the state was immune from liability. After concluding that public property can be partly improved and partly unimproved, the Troth court found the dam and spillway were "improved." Troth, 566 A.2d at 522. Because the accident occurred in the spillway, which was improved property, N.J.S.A. 59:4-8 immunity did not apply. Significantly for our purposes, the New Jersey Supreme Court stated its finding would

9

not foreclose application of 59:4-8 immunity to the lake itself, which remained unimproved property.  Id. at 523.

The parties here do not identify the relevant properties for purposes of assessing N.J.S.A. 59:4-8 immunity. Nevertheless, it is our view that the beach, or more particularly, the water (and beach below) in which each plaintiff was swimming while injured is the relevant property.  As Troth illustrates, we should not look at the entire general area where the injury occurred.  Just as a dam and spillway may be distinguished from an adjoining lake in some circumstances, in these instances, the surf and sand below it where the accidents took place should be distinguished from the entire coastline, the beaches themselves, or structures on the beaches.

B.

To rebut defendants' assertion of immunity, Kowalsky set out to prove that the property was improved.[0]  He submitted a report prepared by an expert on beaches, which chronicled "beach nourishment/modification" projects and the placement of "permanent shore protection structures," such as stone jetties, along the beaches of the region where the accident occurred.  The thrust of the report was that the beaches of the area "[did] not constitute a natural system" and that the beach configuration on

---

[0]In considering the application of N.J.S.A. 59:4-8 immunity, under New Jersey case law, at trial "the burden is on ... [a] public entity both to plead and prove its immunity under" the Tort Claims Act.  Kolitch v. Lindedahl, 497 A.2d 183, 189 (N.J. 1985); see also Bligen v. Jersey City Hous. Auth., 619 A.2d 575 (N.J. 1993).

10

the day of Kowalsky's injury "would not have been possible without substantial man-made modifications to the natural system."  Appellant's Appendix at 117.

Yet Kowalsky's expert presented no evidence about Spray Beach specifically, let alone the site of the injury or the immediate surrounding area.  Furthermore, human modifications do not necessarily result in "improved" property under N.J.S.A. 59:4-8.  In Troth the New Jersey Supreme Court rejected the Law Division's view that the Tort Claims Act only confers immunity when an injury is caused by a natural condition of any unimproved property.  Troth, 566 A.2d at 520-21.  In so doing, the court made clear that finding something is artificial--not natural-- does not necessarily make the property improved.

Whether property is improved turns on whether there has been a substantial physical modification from its natural state, and whether the physical changes create a hazard that did not previously exist and which requires management by the public entity.  Troth, 566 A.2d at 521.  In addition, there must be a causal link between the physical change to the property and the injury.  Id. ("Obviously, in order for liability to be imposed on the public entity there must be a causal connection between the 'improvement' and the alleged injury.").

Under the Troth standard, the property relevant to Kowalsky's claim remained unimproved.  First, there was no evidence that the situs or immediate area of the accident was modified, substantially or otherwise.  Second, there was no evidence that the modifications closest to the site of the

11

accident, such as the stone jetties built offshore at places around Long Beach Island, constituted substantial physical changes and created hazards that did not previously exist and which warranted maintenance by municipal authorities. Finally, there was no evidence of a causal relationship between any purported changes to the surrounding area and the injury Kowalsky suffered.

In sum, looking at all the evidence Kowalsky presented, a reasonable jury could not find that his accident occurred on property which is "improved" under N.J.S.A. 59:4-8. There is no genuine issue of material fact in dispute. In different circumstances other New Jersey courts have applied 59:4-8 immunity on summary judgment. See, e.g., Troth, 566 A.2d 515; Bany v. Borough of Haworth, 632 A.2d 535 (N.J. Super. Ct. App. Div. 1993), *certification denied*, 639 A.2d 301 (N.J. 1994) (reversing trial court grant of immunity under N.J.S.A. 59:4-8, finding tree causing injury upon falling from public tract of land was a "condition of improved property"); Freitag v. Morris County, 426 A.2d 75 (N.J. Super. Ct. App. Div. 1981) (clearing a sledding hill once did not render it improved property). We agree with the district court that the property here was "unimproved," and that the immunity provision in N.J.S.A. 59:4-8 applies.

## C.

In a similar effort to show the property where his accident occurred was improved, Petrillo presented an expert's view that "the beach at Surf City has been maintained by ongoing

12

coastal engineering efforts that have included beach nourishment projects and the construction of groin structures."  Appendix Vol. II at 401.  The expert also claimed that "coastal structures induce water motions and beach characteristics that differ substantially from those found on natural or undisturbed beaches."  Id.

But the expert did not offer any evidence of "water motions" or "beach characteristics" at the site of the injury or the immediate surrounding area.  Furthermore, as we explained, human modifications do not necessarily result in "improved" property under N.J.S.A. 59:4-8.  Like the district court we see no evidence from which a reasonable jury could find that Petrillo's accident occurred on property which is "improved." There was no evidence that the situs or immediate area of the accident was modified, substantially or otherwise.  There was no evidence of substantial physical changes, even in the surrounding area, which created hazards that did not previously exist and which warranted maintenance by municipal authorities.  Nor was there evidence of a causal relationship between any purported changes to the surrounding area and Petrillo's injury.  Because there is no genuine issue of material fact that the property in question is unimproved, N.J.S.A. 59:4-8 immunizes defendants from these claims.[0]

--------

[0]N.J.S.A. 59:4-8 is identical to an immunity statute previously adopted by California.  See Cal. Gov. Code § 831.2 (West 1995). Interpreting the identical provision, California courts have found "[i]t is now generally well settled that human-altered conditions, especially those that have existed for some years, which merely duplicate models common to nature are still 'natural

13

D.

The tragic facts are that the injuries to Roman Kowalsky and Gary Petrillo were caused by ocean waves--acts of nature, which are a "natural" condition of unimproved public property.  As one New Jersey court explained in another case involving a swimmer injured in the surf, "[t]here can be no liability on the part of ... [a] municipality for injuries caused exclusively by the action of the ocean."  Stempkowski v. Borough of Manasquan, 506 A.2d 5, 7-8 (N.J. Super. Ct. App. Div. 1986).

IV.

The question remains whether N.J.S.A. 59:4-8 immunity precludes all causes of action arising from plaintiffs' injuries, including causes of action for negligent supervision and failure to warn.[0]  Kowalsky and Petrillo generally contend defendants

conditions' as a matter of law for the purposes of ... [§ 831.2 immunity]."  Tessier v. City of Newport Beach, 268 Cal. Rptr. 233, 235 (Cal. Ct. App. 1990); see also Knight v. City of Capitola, 6 Cal. Rptr. 2d 874, 879-80 (Cal. Ct. App. 1992).

[0]In their complaints, Kowalsky and Petrillo each alleged defendants were liable under a "dangerous condition" cause of action.  N.J.S.A. 59:4-2 provides:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
> b. a public entity had actual or constructive notice of the dangerous

14

assumed responsibility for the safety of the beaches and were aware the weather created dangerous surf conditions, but nevertheless failed to take action to prevent their accidents. They also argue that as a matter of law N.J.S.A. 59:3-11 abrogates any grant of immunity which might be conferred by N.J.S.A. 59:4-8. We cannot agree. Section 3-11 provides:

> [a] public employee is not liable for the failure to provide supervision of public recreational facilities. Nothing in *this section* exonerates a public employee for negligence in the supervision of a public recreational facility. (emphasis added).

The second sentence of N.J.S.A. 59:3-11 neither creates liability, nor provides defenses or immunities, for negligent supervision. This is left to other statutory provisions like N.J.S.A. 59:4-8, which provides immunity for both public entities and public employees from claims arising from "injur[ies] caused by a condition of any unimproved public property." It is well-established that supervision, once undertaken, must be conducted in a non-negligent manner. See <u>Dudley v. Victor Lynn Lines,</u>

---

> condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>     Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

N.J.S.A. 59:4-2. On appeal Petrillo does not challenge the district court's finding that his "dangerous condition" claim was barred by N.J.S.A. 59:4-8. Brief for Appellant at 16. Similarly, in his brief Kowalsky did not raise this issue on appeal.

Inc., 161 A.2d 479, 488 (N.J. 1960); see also Restatement (Second) of Torts § 323 (discussing negligent performance after undertaking to render services). But the express language of N.J.S.A. 59:4-8 and the policy judgments underlying it demonstrate that immunity may still apply in the face of negligence. Once it has been determined that N.J.S.A. 59:4-8 immunity applies, the New Jersey Tort Claims Act makes clear that "[a]ny liability of a public entity established by this act is subject to any immunity of the public entity." N.J.S.A. 59:2-1b.[0]

Significantly, our understanding of the relationship between N.J.S.A. 59:3-11 and N.J.S.A. 59:4-8 is reinforced by the view of the New Jersey Supreme Court that "[w]hen both liability and immunity appear to exist, the latter trumps the former." Tice v. Cramer, 627 A.2d 1090, 1095 (N.J. 1993) (setting out the general principles of the Act and applying them to find that a police officer enjoys absolute immunity under N.J.S.A. 59:5-2b(2), absent willful misconduct, for injuries to bystander arising from pursuit of fleeing vehicle); see also id. at 1102 ("Under no circumstances, however, may ... [liabilities of public employees], whatever their origin, trump the immunities provided for in the Act. Where inconsistent, the liabilities fall, the immunities stand."). Any possible liability allowed under N.J.S.A. 59:3-11 must be subordinate to immunity conferred by

---

[0]The same principle, that liability is subordinate to immunity, applies to public employees. N.J.S.A. 59:3-1b provides in part: "[t]he liability of a public employee established by this act is subject to any immunity of a public employee provided by law."

16

N.J.S.A. 59:4-8.  To "rule otherwise would be to ignore what is probably the clearest and most important command of the Act, namely, that the immunities set forth in the Act prevail over any liabilities, whether found in the Act or in preexisting law, including statutes."  Id. at 1103.

In addition, notwithstanding that the Tort Claims Act is less sweeping in immunizing public employees than public entities, see generally Chatman v. Hall, 608 A.2d 263 (N.J. 1992) (discussing the differential treatment of public employees and entities by the Act), N.J.S.A. 59:4-8 makes clear that public entities and employees share the same immunity status with regard to "unimproved" property.

In the face of these principles, plaintiffs' reliance on certain New Jersey cases to support the view that N.J.S.A. 59:3-11 abrogates N.J.S.A. 59:4-8 is unwarranted.  While New Jersey courts have yet to address the specific question whether negligent supervision claims survive application of N.J.S.A. 59:4-8 immunity, the decisions refraining from answering this question on the basis of procedural and other grounds do not constitute a holding that immunity is abrogated.  See, e.g., Troth, 566 A.2d at 523 (deeming a negligent supervision claim inappropriate for summary disposition because it "was not alleged in the complaint and was only tangentially developed in the abbreviated record" before the court); Stempkowski, 506 A.2d 5, 7-8 (1986) (holding that natural ocean action was not a "dangerous condition" and therefore failing to reach the question of how immunity claims are related to N.J.S.A. 59:3-11).

17

Plaintiffs cite certain language in Troth to support their view that a negligent supervision claim is not barred by N.J.S.A. 59:4-8 immunity, and that once a public entity assumes supervision, it must be exercised with due care. The New Jersey Supreme Court stated in Troth:

> [t]he controlling principle is that a public entity is not liable for the failure to supervise, but only for negligent supervision. Consequently, a public employee does not lose immunity without some employee conduct, no matter how minute, evidencing an intent to supervise.

Troth, 566 A.2d at 523. But plaintiffs misinterpret the significance of this statement. In Troth the accident occurred in the dam's spillway which was "improved" property. The cited language refers to a negligent supervision claim arising from an injury sustained on "improved" property and therefore is inapposite. Because the injuries here took place on "unimproved" property, N.J.S.A. 59:4-8 immunity applies.[0]

---

[0] Citing N.J.S.A. 59:2-2a, plaintiffs contend a public entity is liable for an employee's negligent supervision.

> A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

N.J.S.A. 59:2-2a. While a public entity can be liable for an employee's negligence, N.J.S.A. 59:2-2a cannot abrogate N.J.S.A. 59:4-8 immunity. Section 59:2-2b provides: "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." If the public employee defendants here are not liable, neither are the municipalities.

18

We believe that the Tort Claims Act itself, coupled with the guidance offered in Tice, make evident that a negligent supervision claim of the character advanced here is also subject to the statutory immunity conferred by N.J.S.A. 59:4-8.

## V.

Finally, defendants maintain that they are immunized from any liability in this case by N.J.S.A. 59:3-2 and 59:2-3, which confer immunity to public entities for the exercise of judgment or discretion under certain circumstances. Given our disposition of the immunity claims presented here, we need not examine this issue.

## VI.

For the foregoing reasons we will affirm the district court's grants of summary judgment in favor of all defendants.