

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-2-2006

# Bilyeu v. Ocean City Pol Dept

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3480

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Bilyeu v. Ocean City Pol Dept" (2006). *2006 Decisions*. Paper 377.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/377

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3480

———

DANETTE BILYEU, in her own right and as Administratrix
of the Estate of Jeffrey Bilyeu, deceased,
and as Parent and Natural Guardian of Plaintiffs,
Matthew Bilyeu, a minor; Brittni Bilyeu, a minor;
and Andrew Bilyeu, a minor,

Appellant

v.

CITY OF OCEAN CITY NEW JERSEY,
NEW JERSEY BEACH PATROL,
and the OCEAN CITY POLICE DEPARTMENT,

Appellees.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cv-03346)
District Judge: Honorable Robert B. Kugler

———

Argued September 11, 2006

Before: FUENTES, FISHER, and BRIGHT,* Circuit Judges.

---

* The Honorable Myron H. Bright, Senior Judge, United States Court of Appeals
for the Eighth Circuit, sitting by designation.

Andrew J. Stern, Esq. (Argued)
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
COUNSEL FOR APPELLANT

A. Michael Barker, Esq. (Argued)
Barker, Douglass & Scott
210 New Road, Suite 12
Linwood, NJ 08221
COUNSEL FOR APPELLEES

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

This appeal arises from a wrongful death action brought by Appellant, Danette

Bilyeu ("Bilyeu"), in her own right, and on behalf of her deceased husband Jeffrey Bilyeu

and three of her children, against Appellees, Ocean City, New Jersey Beach Patrol, and

the Ocean City Police Department (collectively "Ocean City").

**I.**

Because we write for the parties, who are familiar with the facts and procedural

history of the case, we will not recite them in detail. Briefly, in 1992, Ocean City began a

multi-million dollar "beach nourishment" program, in which the Army Corps of

Engineers dredged millions of cubic yards of offshore sediment and deposited the

material closer to shore.

On September 11, 1999, the Bilyeu family visited Ocean City's 30th Street Beach. There were no lifeguards on duty. Jeffrey and his son Matthew were knee-deep in the ocean when a strong rip current swept Matthew out to sea. Jeffrey attempted to rescue Matthew but he too was caught in the rip current. Danette rescued Matthew, but could not rescue Jeffrey. Jeffrey was eventually carried to shore by lifeguards from the 34th Street Beach and rushed to the hospital, where he was pronounced dead. Hurricane Dennis had passed Ocean City the week before Mr. Bilyeu drowned.

On July 13, 2001, Bilyeu filed a Complaint against Ocean City in the District Court for the District of New Jersey. The Complaint alleged, among other things, "negligent supervision" and "failure to warn" claims. On April 23, 2004, Ocean City filed a Motion for Summary Judgment based on alleged immunity under the New Jersey Torts Claims Act ("N.J.T.C.A."). The Motion was granted. Bilyeu's Motion for Reargument was denied in an Order issued on June 22, 2005. This appeal followed.

Bilyeu argues that Ocean City is responsible for the conditions on the 30th Street Beach that caused the rip current which ultimately caused Mr. Bilyeu's drowning. Ocean City asserted immunity on the ground that Mr. Bilyeu drowned in the Atlantic Ocean, which is "unimproved" property under the terms of N.J.S.A. § 59:4-8.

The United States District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The Third Circuit

reviews an Order granting summary judgment *de novo*, applying the same standard used by the District Court. Sheet Metal Workers' Int'l Assoc. Local 19 v. Herre Bros., Inc., 201 F.3d 231, 239 (3d Cir. 1999). A grant of summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "We review the District Court's denial of reconsideration for abuse of discretion." Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004).

In adjudicating a case under state law, this Court must predict how the highest court of that state would decide the relevant legal issues. See Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1049 (3d Cir.), cert. denied, 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993). Our review of the District Court's determination of state law is *de novo*. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); see also Acierno v. Cloutier, 40 F.3d 597, 609-10 (3d Cir. 1994) (en banc).

## II.

The central issue presented by this appeal is the nature and scope of Ocean City's immunity under the New Jersey Tort Claims Act ("N.J.T.C.A."), which governs damage claims against public entities and public employees. In particular dispute is N.J.S.A. § 59:4-8, which confers immunity from liability for injuries caused by a condition of

"unimproved" public property. Ocean City asserts that it is entitled to immunity under this provision. Bilyeu maintains that the public property at issue is "improved" and therefore N.J.S.A. § 59:4-8 immunity does not apply.

The New Jersey Tort Claims Act sets forth the parameters of immunity for government officials and government acts. As part of the N.J.T.C.A., the New Jersey Legislature promulgated N.J.S.A. § 59:4-8, which provides that "[n]either a public entity nor a public employee is liable for an injury caused by a condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." Both the comment to § 59:4-8 and the New Jersey Supreme Court make clear that "the term unimproved public property should be liberally construed." See Kowalsky v. Long Beach Tp., 72 F.3d 385, 388 (3d Cir. 1995) (quoting Troth v. State, 566 A.2d 515, 518 (N.J. 1989); also citing Comment to N.J.S.A. § 59:4-8, 4-9).

"Underlying these determinations is the New Jersey Legislature's policy judgment that the public should be permitted to use unimproved public property in its natural condition, but under the cloak of immunity." Id. "Otherwise, the burdens and expenses of putting such property in safe condition as well as the expense of defending claims for injuries might cause public entities to close these areas to public use altogether." Id. (citing Troth, 566 A.2d at 519-20; Report of the Attorney General's Task Force on Sovereign Immunity (May 1972)).

"In its clearest statement of the standard guiding a determination of whether

property remains 'unimproved' under N.J.S.A. 59:4-8, the New Jersey Supreme Court explained [p]ublic property is no longer 'unimproved' when there has been substantial physical modification of the property from its natural state, and when the physical change creates hazards that did not previously exist and that require management by the public entity." Id. (quoting Troth, 566 A.2d at 521) (internal quotation marks omitted).

"Whether property is improved turns on whether there has been a substantial physical modification from its natural state, and whether the physical changes create a hazard that did not previously exist and which requires management by the public entity." Id. at 389 (citing Troth, 566 A.2d at 521) (emphasis added). "In addition, there must be a causal link between the physical change to the property and the injury." Id.

Moreover, "[h]uman modifications do not necessarily result in 'improved' property under N.J.S.A. 59:4-8," even if they were intended as an "improvement" to the natural state of the property. Id. "In Troth . . . the [New Jersey Supreme Court] made clear that finding something is artificial–not natural–does not necessarily make the property improved." Id. (citing Troth, 566 A.2d at 520-21). Indeed, "[i]t is now generally settled that human-altered conditions, especially those that have existed for some years, which merely duplicate models common to nature are still 'natural conditions' as a matter of law for the purposes of [the California statute on which N.J.S.A. 59:4-8 is modeled]." Kowalsky, 72 F.3d at 390 n.5 (quoting Tessier v. City of Newport Beach, 219 Cal. App. 3d 310, 314, 268 Cal. Rptr. 233, 235 (1990)).

To rebut Ocean City's assertion of immunity, Bilyeu sets out to prove that the 30th Street Beach was improved by the Ocean City beach nourishment project. Bilyeu submitted three reports prepared by an oceanography expert, Dr. Guy Meadows ("Meadows"). The first two reports concluded that conditions conducive to life-threatening rip currents were likely present at the 30th Street Beach on the day Mr. Bilyeu drowned, and that Ocean City's beach nourishment program substantially modified the natural state of the beach, making it more conducive to rip current formation. Meadows's first two reports were completed before he had access to topographical data from before and after the nourishment project, data that he analyzed later, in his third supplemental expert report.

Before Meadows submitted his third report, however, he was deposed and questioned about whether the rip-current topography that he suggested was created by beach nourishment (namely sandbars), might also have been present on an unaltered beach. Meadows testified, in pertinent part, as follows:

Q:     And if they [sandbars] were present [on the 30th Street Beach], you can't say whether they were related in any way to a beach renourishment program?

. . .

A:     Given the vast quantities of material that were placed on the beach prior to the accident, all types of nearshore bed forms were most likely present. <u>They were most likely present in the natural beach. As well as an attempt to reestablish that beach by the presence of beach nourishment</u>. So, nearshore bars are a typical feature of these beaches. I would expect that – that they would have been present.

Appx. at A979-A983 (emphasis added).

Meadows's third report, which focused on topographical data from the 30th Street Beach area, reiterated his earlier conclusions that rip-current topography had been caused by the nourishment program: "Before the implementation of this program, this type of dangerous condition did not exist . . . ." Appx. at A799. But the third report does not retract Meadows's admission that the rip-current topography he identified as being caused by the nourishment project was most likely present in the natural beach prior to the beach's erosion.

The District Court, therefore, correctly found that Meadows's testimony and reports only suggest the possibility that the sandbars at the 30th Street Beach would not have occurred naturally, not the probability. The scope of Meadows's research was limited to what topography was present at the site, immediately before and after nourishment, and what changes nourishment is likely to have made to the site. The record therefore contains no evidence to support the assertion that the nourishment project "create[d] a hazard that did not previously exist and which requires management by the public entity," a key feature of the New Jersey Supreme Court's definition of "improved," under § 59:4-8. See Troth, 566 A.2d at 521.

## III.

For these reasons, Appellants fail to show a genuine issue of material fact with respect to the immunity issue and we will affirm the District Court's Orders granting

-8-

Ocean City's Motion for Summary Judgment and denying reargument.  We need not

reach Ocean City's alternative grounds for affirmance.